TEXACO, INC., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

SHELL OIL COMPANY, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 77–2271, 77–2881.

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1980.

Rehearing Denied Oct. 14, 1980.

J. W. Bullion, Emily A. Parker, Dallas, Tex., for plaintiff-appellant in No. 77–2271.

Martha J. Stroud, Asst. U.S. Atty., Dallas, Tex., M. Carr Ferguson, Asst. Atty. Gen., William A. Friedlander, Ann B. Durney, John G. Manning, Crombie J. D. Garrett, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee in No. 77–2271.

Charles W. Hall and Gerald W. Haddock, Houston, Tex., for plaintiff-appellant in No. 77–2281.

J. A. Canales, U.S. Atty., Houston, Tex., Crombie J. D. Garrett, Ann Belander Durney, John G. Manning, Attys., M. Carr Ferguson, Asst. Atty. Gen., William Friedlander, Atty., Tax Division, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee No. 77–2281.

Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

PER CURIAM:

Prior to the enactment of the Tax Reform Act of 1969, corporations engaged in oil and gas exploration could obtain certain tax advantages by assigning carved-out production payments [1] to corporations, individuals, or charitable organizations, which, in turn, financed their purchase with borrowed funds secured by the production payment. The IRS takes the position that assignments of carved-out production payments were subject to section 4361 of the Internal Revenue Code of 1954, which imposed a documentary stamp tax "on each deed, instrument or writing by which any lands, tenements or other realty sold shall be granted, assigned, transferred or otherwise conveyed . . . ." [2]

Texaco, Inc. (Texaco) and Shell Oil Co. (Shell) both entered into several transactions between 1959 and 1967 involving the assignment of carved-out production payments, and the IRS assessed a documentary stamp tax against each corporation on each such transaction. Shell and Texaco paid the taxes and then brought refund actions in the Southern and Northern Districts of Texas, respectively. The district courts ruled against the oil companies, which now appeal to this court.[3]

Shell and Texaco argue that the stamp tax does not apply to their assignments of carved-out production payments for each of the following reasons: (1) the documents conveying the production payment did not assign "lands, tenements, or other realty" (realty) as required by section 4361; (2) the

assignments created security interests, which section 4362(a) of the Internal Revenue Code of 1954 exempted from the stamp tax; and (3) the IRS did not adopt the position that the stamp tax applied to carved-out production payments until a 1966 revenue ruling, which it could not apply retroactively to these assignments.

In *Chevron Oil Co. v. United States*, 471 F.2d 1373, 200 Ct.Cl. 449 (Ct.Cl.1973), the plaintiff, Chevron Oil Co., raised these same arguments before the Court of Claims. The Court of Claims rejected them, concluding that the stamp tax did apply to assignments of carved-out production payments. We agree with the Court of Claims that the arguments are without merit, and thus affirm the decisions of the district courts below.

### A. Meaning of "Realty"

■ Texaco and Shell rely on section 43.-4361–1(a)(4)(i) of the Treasury Regulations, which defines the term "realty" to include:

(a) Those interests in real property which endure for a period of time, the termination of which is not fixed or ascertained by a specific number of years, such as an estate in fee simple, life estate, perpetual easement, etc., and

(b) Those interests enduring for a fixed period of years but which, either by reason of the length of the term or the grant of a right to extend the term by renewal or otherwise, consist of a bundle of rights approximating those of the class of interests mentioned in subdivision (i)(a) of this subparagraph.

Texaco contends that a carved-out production payment is an interest of limited dura-

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. A typical carved-out production payment is a "fractional interest of oil or gas in and under and that may be produced, saved and sold from [certain defined properties]." *See* Texaco Record at 30. The production payment is, however, limited to that quantity of oil and gas sufficient to pay an amount equal to the purchase price of the production payment, plus interest. *Id.* at 30. Generally, a production payment is preceded by a geological survey showing sufficient oil or gas to satisfy the pay-

ment. To ensure ongoing production, the exploring company will covenant to operate continuously the properties in a workmanlike manner.

2. The stamp tax was repealed effective January 1, 1968 by the Excise Tax Reduction Act of 1965, Pub.L. No. 89–44, § 401(b), 79 Stat. 148.

3. Because of the similarity of the facts and legal issues presented, we consolidated the two appeals.

tion that is excluded from the Treasury Regulation's definition of "realty." The "permanent" interests in land in this case, Texaco argues, are Texaco's oil and gas leaseholds; although the assigned production payments have been carved out of these leaseholds, their duration must be viewed as "limited" because they are defined by dollar or production amounts.

We conclude, however, that the "bundle of rights" represented by a carved-out production payment so closely approximates the bundle of rights represented by a mineral leasehold that a carved-out production payment must be considered realty as well. As the Court of Claims explained in *Chevron*:

A mineral lease conveys an interest in land in place that permits the lessee to reduce to possession and to dispose of part of the land involved. A production payment is a fractional or proportionate interest in a mineral lease, that, when naked without further obligation or guarantee, as here, is a right to reduce to possession and to dispose of sufficient minerals to achieve the value specified. Whether the production payment is reserved out of a transfer of all other interests in the mineral in place, or is carved out of a larger interest, the holder of the production payment owns the same kind of an interest in the land. Instruments

that transfer such rights, whether a lease, a retained production payment, or a carved out production payment, convey an interest in "land, tenements, or other realty" for purposes of the stamp tax. *Id.* at 1380–81.[4]

### B. Security Interest

■ Texaco and Shell argue that these production payments secured a debt, and were thus exempted from the stamp tax by section 4362(a) of the Internal Revenue Code.[5] Their theory appears to be that a purchaser's pledge of a production payment is also the pledge of the seller. We disagree, however, for the reasons stated in *Chevron*:

Plaintiff was not personally obligated, or a guarantor of the production payment, until the oil had been produced, saved and sold for its account. In the event, unlikely as it might be in light of industry technology and experience, that plaintiff could not produce oil from the leased properties, and other agents for the charities were unable to obtain production sufficient to satisfy the production payment, plaintiff would have no obligation to the charities. In such a situation, however, the charities nonetheless would be liable to the banks on their promissory notes. The "Conveyance of Production Payment and Agreement" sold and transferred to

4. Several of the carved-out production payments at issue in this case, like the production payments in *Chevron*, were explicitly limited to a maximum duration of fifteen years from the effective dates of the agreements. As in *Chevron*, the parties in the present case estimated that "the production payments would be paid out in a substantially shorter period than the 15-year maximum term." *Chevron Oil Company v. United States*, 471 F.2d 1373, 1376, 200 Ct.Cl. 449 (1973). We agree with *Chevron*'s conclusion that these fifteen year ceilings did not have the effect of making the carved-out production payments interests of limited duration that would not be "realty":

A mineral lease and a production payment gives the right to sever and remove for all time from the underlying mineral reserve all or a proportionate part of the mineral in place. Duration of the term of the right granted is not the significant characteristic that distinguishes a mineral lease from other leaseholds. The fact that the production pay-

ments sold by the plaintiff had maximum terms of 15 years does not determine that the instrument should be exempt from the stamp tax.

The 15-year term was not intended by the parties to be coextensive with the payout period of the production payment, and, in fact, all of the production payments were discharged in less than 2 years [25 months in the present case]. Viewed in its entirety, the 15-year term of the production payment and of the rights granted in the agreement was not a substantial aspect of the transaction. The conveyance of a right to produce oil and exhaust a proportionate part of the reservoir, however, was primary to the transaction. *Id.* at 1382.

5. Section 4362(a) reads as follows:
The tax imposed by Section 4361 shall not apply to any instrument or writing given to secure a debt.

the charities an ownership interest to all of the oil, gas and other hydrocarbons that were allocable to the production payment. This was an interest in "lands, tenements, or other realty" and was pledged by the *charities* to the banks as security for the promissory notes.

*Id.* at 1381 (emphasis supplied).

### C. Retroactivity

In 1959, the Internal Revenue Service published Rev.Rul. 59–282, 1959–2 Cum.Bull. 332, which held that a retention of a reserved production payment, like the sale of mineral leasehold, was a conveyance of realty subject to the documentary stamp tax. A reserved production payment is a fractional interest the owner of a working oil or gas interest reserves to himself when he conveys the working interest.

In 1966, the IRS ruled that the principles of Rev.Rul. 59–282 also applied to carved-out production payments and, hence, that carved-out production payments were subject to the stamp tax. Rev.Rul. 66–68, 1966–1 Cum.Bull. 258. Texaco and Shell contend that the assessment of a stamp tax against conveyances of carved-out production payments prior to Rev.Rul. 66–68's publication is an improper retroactive application of an administrative position.

We cannot agree. The distinction between a retained production payment and a carved-out production payment is, in essence, the difference between the holders of similar interests in realty, and not a difference between the interests themselves. Since we are unable to find any significant distinction between the two types of interests, we adopt the Court of Claims' conclusion: "The 1966 revenue ruling applied to carved out production payments the concepts that had been announced in 1959. Its retroactivity to 1959 was appropriate." *Id.* at 1381.

Accordingly, the decisions of the district courts are AFFIRMED.

\* Fed.R.App.P. 34(a); 5th Cir. R.18.