**In re JACOBY–BENDER, INC., Debtor.**

**Bankruptcy No. 882–81292–20.**

United States Bankruptcy Court, E.D. New York.

March 8, 1984.

Levin, Weintraub & Crames, New York City, for debtor; Cindy E. Tzerman, New York City, of counsel.

New York City Law Dept., New York City, for New York City; Arnold Fox, New York City, of counsel.

Paul Milbauer, Asst. Atty. Gen., New York City, for State Tax Commission.

ROBERT JOHN HALL, Bankruptcy Judge.

This is a motion brought by the debtor, Jacoby-Bender, Inc. ("debtor"), pursuant to 11 U.S.C. § 1146(c) (Supp. IV 1980) for an order exempting it from the payment of the New York City Real Estate Transfer Tax, N.Y.C.Admin.Code § II 46–5.0, *as authorized by* N.Y.Tax Law § 1201(b) (McKinney Supp.1983–84); the New York State Real Estate Transfer Tax, N.Y.Tax Law § 1402 (McKinney Supp.1983–84); and the New York State Capital Gains Tax, N.Y.Tax Law § 1441 (McKinney Supp.1983–84). All three of these taxing statutes require that their taxes be paid as a prerequisite to a deed's recordation.

Prior to filing the motion currently before the Court, the debtor had filed a motion seeking an order limited to directing the State and the City to accept for filing a deed without the *prepayment* of these taxes, leaving for a future time any determination regarding a complete *exemption* from these taxes. The debtor relied on section 1146(c) of the Bankruptcy Code, which states:

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any State or local law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c) (Supp. IV 1980).

In a Memorandum and Order, this Court denied the debtor's initial motion without prejudice, on the basis that the debtor's plan had not yet been confirmed. *In re Jacoby-Bender, Inc.*, 34 B.R. 60, 62 (Bkrtcy.E.D.N.Y.1983). In its Memorandum, the Court held that a deed was an instrument of transfer within the meaning of section 1146(c). *Id.* The Court further held that had the debtor's plan of reorganization already been confirmed, the making or delivery of the deed in question would occur "under a plan confirmed," because the plan's consummation depended almost entirely upon the sale of the building. The latter holding was in response to the City's argument that the sale of the property and the proposed delivery of the deed were "mere preliminary steps" to the debtor effectuating its plan. *See id.*

On November 10, 1983, the debtor's plan of reorganization was confirmed. In accordance with section 1123(a)(5) of the Bankruptcy Code, Article IV of the debtor's confirmed plan provided for the funding of the plan through the sale of a building owned by the debtor. Other provisions of the plan provided for the distribution of most of the sale proceeds on the plan's consummation date (defined in the plan as

the earlier of the tenth business day following the sale of the building or December 1, 1983).

On December 19, 1983, the debtor filed a new motion seeking an order directing the filing of the deed without prepayment of the taxes and approving the contract to sell the building. More importantly, this second motion sought an order declaring that the sale of the property was *exempt* from the imposition of the taxes. The matter was heard on December 29, 1983 at which time the City objected to the filing of the deed without the prepayment of the City's Real Estate Transfer Tax. The State, on the other hand, had no objection to the debtor's filing of the deed without the prepayment of its Real Estate Transfer Tax and the State's Capital Gains Tax. In fact, the State conceded that the debtor was exempt from the Real Estate Transfer Tax under section 1146(c) of the Bankruptcy Code. The State argued only that section 1146(c) did not afford the debtor an exemption to the State's Capital Gains Tax. The Court reserved decision.

The sale was consented to by the creditors' committee, and the Court signed an Order on January 12, 1984 approving the sale. The Order additionally directed the State and City to accept the deed for filing without the prepayment of the N.Y.S. Real Estate Transfer Tax, but the Order required the debtor's attorney to hold in escrow $155,000 pending this Decision, which sum represented the City's Real Estate Transfer Tax and the State's Capital Gains Tax. In light of the State's concession that the debtor was exempt from its Real Estate Transfer Tax, the debtor was not required to hold the sum representing that tax in escrow.

The litigants have not presented, and the Court has not found, any meaningful legislative history or any court opinions construing 11 U.S.C. § 1146(c) or its precursors.[1] Yet the Court is once again faced with the debtor's attempts to utilize the section and the City's piecemeal attempts to narrow the section's applicability. For the following reasons the deed is exempt from the City's Real Estate Transfer Tax and the State's Real Estate Transfer Tax, but the deed is not exempt from the State's Capital Gains Tax.

■ The City, in its affidavit in opposition to the motion, first argues that:

Although the Administrative Code provides that "the director of finance may provide for the use of stamps as evidence of payment and that they shall be affixed to the deed before it is recorded" (§ II46–5.0), the City does not use stamps for any purpose in connection with the tax, and the use of stamps was not authorized in the enabling act. Tax Law, § 1201(b). Hence, the Real Property Transfer Tax is not a stamp tax or a similar tax.

The debtor appropriately responded to this simplistic argument by pointing out that the phrase "or a similar tax" in section 11 U.S.C. § 1146(c) clearly implies that the use of a stamp is not a crucial element of the exemption. Beyond this fleeting debate, the litigants have had shed no light on the meaning of "stamp tax or similar tax."

The inquiry into the meaning of the phrase "stamp tax or similar tax" necessarily must begin with the definition of a stamp tax. The Court's search turned up no cases or legislative history directly defining a stamp tax. Nevertheless, the plain meaning of a stamp tax can be distilled from statutes expressly creating stamp taxes, the usage of the term in court opinions, and definitions given by other authority.

■ Black's Law Dictionary defines a stamp tax as "[t]he cost of stamps which are required to be affixed to legal documents such as deeds, certificates, and the like." Black's Law Dictionary 1259 (rev. 5th ed. 1979). Black's makes cross-refer-

---

1. For the texts of the precursors to section 1146(c), see 6A Collier on Bankruptcy, ¶ 15.08

(14th ed. 1977).

ence to "Documentary Stamp", which is defined as follows:

> Stamp required by federal (prior to 1968) and state law to be affixed to deeds and other documents of transfer before they may be recorded, the cost of which is generally governed by the consideration recited in the document. Federal Revenue Stamps were abolished in 1968.

*Id.* at 433. This definition reveals two of the characteristics of stamp taxes; i.e., that being the amount of the tax is usually determined by the consideration recited in the document, and that the taxes must be paid as a prerequisite to a deed's recordation. The City and State Real Estate Transfer Taxes impose the tax at a rate determined by the consideration or value of the property conveyed. N.Y.Tax Law §§ 1402, 1201 (McKinney 1975 and Supp. 1983–84). The Court can take judicial notice that in most instances where property is conveyed, the City and the State do not perform appraisals, and therefore must rely upon the consideration as set forth by the parties to the transaction. As to the second characteristic, the City and State require the payment of the taxes prior to a deed's recordation. Thus, the Real Estate Transfer Taxes involved herein have these two characteristics of most stamp taxes.

An example of a stamp tax was that involving a Florida tax on the transfer of stocks and bonds. *See Lee v. Bickell,* 292 U.S. 415, 421, 54 S.Ct. 727, 730, 78 L.Ed. 1337 (1934). Justice Cardozo described how the tax operated:

> The scheme of the statute is to tax the transfer of shares of stock, whether executory or executed, by stamps to be affixed to those writings, and those only, which in a practical sense are the repository of the agreement or the instruments or vehicles for the ensuing change of title.

The purpose behind the use of a stamp in collection of the tax is to conveniently provide clear and visible evidence of payment. *See id.* at 423, 54 S.Ct. at 730. Thus a third characteristic of stamp taxes is the ease of ascertaining whether they have

been paid. Certainly this characteristic of stamp taxes could not have been the crucial element behind the exemption of section 1146(c) afforded to debtors by Congress. There is simply no logical connection between the use of a stamp and the need of debtors for tax exemptions in the reorganization process. Likewise, there appears to be no relationship between the ease of identifying whether a tax has been paid and the reorganization process. Nevertheless, if such an association were important, the taxes in the instant case have this characteristic; albeit not by the use of stamps, but by the requirement of prepayment of the taxes prior to recordation of the deed. Recordation of the deed is clear and convenient evidence of the payment of the taxes.

Two additional technical characteristics of stamp taxes are that stamp taxes are charged on written instruments as such, and that the written instruments which are made subjects of the tax are recognized in law as important evidence of the enforcement of legal rights. 71 Am. Jur.2d *State and Local Taxation* § 639 (1973). The taxes in question in the instant case are imposed upon deeds, and therefore the taxes unmistakably have these latter two characteristics.

Aside from technical characteristics, an examination into the nature of stamp taxes reveal that the City and State Real Estate Transfer Taxes have a kinship to stamp taxes. Stamp taxes are in the nature of excise taxes. 71 Am.Jur.2d § 639; *United States Radiator Corp. v. State of N.Y.,* 208 N.Y. 144, 148, 101 N.E. 783 (1913); *People ex re. Hatch v. Reardon,* 184 N.Y. 431, 446, 77 N.E. 970 (1906), *aff'd,* 204 U.S. 152, 27 S.Ct. 188, 51 L.Ed. 415 (1907). Black's defines an excise tax as an "inland imposition, paid sometimes upon the consumption of the commodity, and frequently upon the retail sale." Black's Law Dictionary 672 (rev. 4th ed. 1968). *See also,* Ballentine's Law Dictionary 429 ("A tax imposed on the sale, even the use, of a certain article and on certain transactions and occupations.") An excise tax appears

to be a broad category of taxes levied upon the sale or consumption of an item.

A survey of stamp tax statutes reveals that the stamp tax is a subset of this broad category. In all of the stamp taxes examined by the Court, the item to be taxed was a written instrument representing a sale or transfer, and the payment of the tax was evidenced by the affixation of stamps to the written instrument. Certainly if a tax was imposed upon a written instrument representing a sale or transfer. The essential common element of stamp taxes is the imposition of the tax upon a written instrument representing a transfer or sale. *See, e.g., Lee v. Bickell*, 292 U.S. at 417, 54 S.Ct. at 728 (stamp tax on original issue, transfer or sale of stocks and bonds); *Texaco, Inc. v. United States*, 624 F.2d 20, 21 (5th Cir.1980) (federal stamp tax on deeds by which realty is transferred). *Standard Packaging Corp. v. United States*, 197 F.Supp. 788, 790 (D.C.Minn.1961) (federal stamp tax on issuance of certificates of indebtedness); *People ex rel Hatch v. Reardon*, 184 N.Y. at 437, 77 N.E. 970 (stamp tax on sale or transfer of stock); *Department of Revenue v. Dix*, 362 So.2d 420, 422 (Fla.App.1978) (stamp tax on instruments conveying an interest in real property to another for consideration); *Greve v. Coffin*, 14 Minn. 263, 267 (1869) (federal stamp tax upon deeds conveying real property).

The tax involved in *Texaco Inc. v. United States* was similar to the Real Estate Transfer Taxes involved herein. The tax therein provided:

> There is hereby imposed, on each deed, instrument, or writing by which any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds $100, a tax at the

rate of 55 cents for each $500 or fractional part thereof.

26 U.S.C. § 4361, *repealed by* The Excise Tax Reduction Act of 1965, Pub.L.No. 89–44, § 401(b), 79 Stat. 148 (effective January 1, 1968); *see Berkeley Savings & Loan Assn. of Newark N.J. v. United States*, 301 F.Supp. 22, 23 (D.C.N.J.1969). The original version of the State Real Estate Transfer Tax borrowed most of its language verbatim from the above quoted statute. *See* N.Y.Tax Law § 1402 (McKinney 1975), *amended by* N.Y.Tax Law § 1402 (McKinney Supp.1983–84). The original version provided:

> A tax is hereby imposed on each deed at the time it is delivered by a grantor to a grantee when the consideration or value of the interest conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) ... exceeds one hundred dollars, at the rate of fifty-five cents for each five hundred dollars or fractional part thereof.

The parties have not informed the Court of the specific manner by which the State registers payment of its Real Estate Transfer Tax, but the statute provides:

> (a) The real estate transfer tax shall be paid either by the purchase of adhesive documentary stamps ..., or through the use of metering machines .... [T]he tax commission may prescribe any other method for payment of the tax, as long as such method includes a procedure under which payment of the tax is noted on the deed .... * * *
>
> (b) Documentary stamps shall be affixed to the deed and cancelled before the deed is recorded. * * *
>
> (c) If the tax is paid through the use of a metering machine or by any other method ... the tax shall be paid before the deed is recorded. * * *

N.Y.Tax Law § 1403 (McKinney Supp. 1983–84).

■ New York State judiciously agrees with the debtor that its Real Estate Transfer Tax is subject to the exemption in 11 U.S.C. § 1146(c), but New York City nevertheless persistently contends that its Real

Estate Transfer Tax is not a stamp tax or similar tax. This contention, however, is patently fallacious in view of the nature of the City's Real Estate Transfer Tax and the language of its enabling statute. The statute provides that the City may impose a tax on each deed by which any real property is transferred, measured by the consideration or value of the interest or property conveyed or transferred, and may require the prepayment of the tax before the deed is recorded. N.Y.Tax Law § 1201 (McKinney Supp.1983–84). Section 1240 permits the City to enact an administrative code providing for the manner of the tax's collection. New York Tax Law § 1240 (McKinney 1975). The New York City Administrative Code permits the director of finance to provide for the use of stamps as evidence of payment and to require their affixation before a deed can be recorded. N.Y.C.Admin.Code § II46–5.0. Functionally and pragmatically, the New York Real Estate Transfer Tax is the same as the New York State Real Estate Transfer Tax, and all of the stamp taxes heretofore cited. Regardless of whether stamps are permitted, prohibited, used, or not used, the inescapable conclusion is that New York City's tax imposed upon deeds as a prerequisite to their recordation is a tax similar to a stamp tax.

Examination of the New York State Capital Gains Tax, on the other hand, reveals that this tax is not similar to a stamp tax. Section 1441 of the New York Tax Law provides:

A tax is hereby imposed on gains derived from the transfer of real property within the state.

N.Y.Tax Law § 1441 (McKinney Supp. 1983–84). This tax is due on the date of the transfer. N.Y.Tax Law § 1442 (McKinney Supp.1983–84). Essentially the tax is imposed upon the difference between the consideration for the transfer and the original purchase price of the property, where the consideration exceeds the original purchase price. N.Y.Tax Law § 1440(3) (McKinney Supp.1983–84).

An important distinction exists between this tax and the Real Estate Transfer Taxes which takes the Capital Gains Tax out of the exemption afforded by 11 U.S.C. § 1146(c). Section 1146 exempts from taxation the "issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer ...." Thus, the exemption covers taxation of the *making* or *delivery* of a deed. The only relationship between the Capital Gains Tax and section 1146(c) is that the Capital Gains Tax is imposed *at the time* of the making or delivery of the deed. The transfer itself is not the subject of the tax, but rather the gain realized by the transferor upon the transfer.

Furthermore, the nature of a capital gains tax is not similar to the nature of a stamp tax. Capital gains taxes are not excise taxes but rather they are income taxes. *See* 71 Am.Jur.2d *State and Local Taxation,* § 557 (1973) ("[G]ains on the disposition of property are taxable on the theory that all accretions in value are income in the year of realization ....") Whereas Stamp taxes generally tax the written instrument embodying a transfer, the Capital Gains tax taxes neither the instrument nor the transfer, but the income realized by the transferor. None of the stamp taxes discussed in the cases cited above bear any relationship to a capital gains tax or an income tax. All of the stamp taxes were imposed regardless of whether the transferor gained or lost money in the transaction involved.

The Court concludes that the Real Estate Transfer Taxes are similar to stamp taxes and that therefore the exemption of 11 U.S.C. § 1146(c) is applicable. Regarding the State's Capital Gains Tax, however, the Court concludes that the tax is not a stamp tax or similar tax, and that to the extent the debtor's motion seeks an order exempting it from liability for that tax, the motion must be denied.

The City presents one final argument why the debtor should not be granted an exemption from the City's Real Estate Transfer Tax. The City contends, again

without providing the Court with any reasons, pertinent legislative history or court opinions, that the intent of section 1146(c) was "to facilitate transfers within the estate, such as to a reorganized entity, or to 'those having an interest in such property,' to which the debtor's estate is to be transferred." The City basically argues that the transfer of a debtor's property to an entity not financially related to the debtor's estate (e.g., not a creditor or affiliate of the debtor) is not what Congress meant by a "transfer under a plan" in section 1146(c).

■ The City refers to subsections 1123(a)(5)(B), (C), and (D) of the Bankruptcy Code, apparently to make the Court aware that chapter 11 plans may provide for the sale of the debtor's property to creditors or new entities created for the purpose of purchasing the debtor's property. Subsections 1123(a)(5)(B), (C), and (D) state that:

(a) A plan shall—

(5) provide adequate means for the plan's execution, such as—

\* \* \* \* \* \*

(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

(C) merger or consolidation of the debtor with one or more persons;

(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate;

\* \* \* \* \* \*

Although it may be true that a debtor may fund its plan through the transfer of property to creditors or new entities created to receive the property, it is equally true that the debtor may sell its property to entities wholly unrelated to the debtor. *See* 11 U.S.C. § 1123(a)(5)(B) and (D), and 11

U.S.C. § 363(b). Nevertheless, the City apparently suggests that because a debtor may make a transfer of property under a plan to creditors or other related entities, Congress meant to limit the exemption of section 1146(c) to such transfers. To suggest such without more is to engage in pure speculation. Certainly it is possible that Congress intended such a limited exemption. But, if Congress intended such a limitation, it easily could have and certainly would have so indicated. Instead Congress enacted the unlimiting language that the exemption applied to "the making or delivery of an instrument of transfer under a plan. . . ." 11 U.S.C. § 1146(c).

Under the Code, a plan may be executed by the transfer of all or any part of the property to "one or more entities, whether organized before or after the confirmation of such plan." 11 U.S.C. § 1123(a)(5)(B). In the instant case, the building was transferred to such an entity organized before the plan's confirmation. Subsection 1123(a)(5)(B) merely emphasizes that the plan may provide for a transfer even though the transferee is not yet in existence. In addition, subsection 1123(a)(5)(D) provides that the plan may be executed by the sale of all or any part of the property of the estate. Absent language limiting the exemption to transfers made to related or newly created entities, there is no basis on which to hold that Congress intended to limit the tax exemption to transfers within the estate.[2]

■ Congress desired to aid the implementation of plans and the reorganization process by providing transfers of property free of certain taxes. Congress contemplated that plans could provide for the claims of creditors to be satisfied through transfers of property directly to creditors, mergers with creditors, and even the issuance of securities to creditors; but Congress additionally contemplated the trans-

---

2. The Court is aware that this tax exemption, like all tax exemptions, may be subject to abuse. Although this issue was not raised by the parties, the Court feels compelled to note that in the event a plan were proposed under which a transfer of property was to take place, primarily for the purpose of avoiding a tax rather than implementing the plan, confirmation would be denied. *See* 11 U.S.C. § 1129(a)(3). (Plan must be proposed in good faith.)

fer of property to unrelated entities with creditors' claims to be satisfied with cash. *See* 11 U.S.C. §§ 1123(a)(5)(B), (C), (D), and (J). The debtor's reorganization would be equally aided by an exemption from taxation of a transfer outside the estate as it would by a transfer within the estate. Absent evidence of Congress's contrary intent, the plain meaning of the exemption should prevail. The debtor's confirmed plan provides for its implementation through the distribution of the proceeds from the sale of the building; therefore, just as the transfer of the building directly to creditors may occur "under a plan," the transfer of the building to a third party with the proceeds distributed to creditors may occur "under a plan."

Consequently, in respect to the New York State and New York City Real Estate Transfer Taxes, the debtor's motion seeking an order of exemption pursuant to 11 U.S.C. § 1146(c) is granted. With respect to New York State Capital Gains Tax, however, the debtor's motion is denied.

So Ordered.