**In re E. Thomas WILLIAMS, Jr., Debtor–Appellant.**

Nos. 95 CV 5758, 94 CV 3022.

United States District Court, E.D. New York.

Oct. 28, 1995.

Weinberg, Kaley, Gross & Pergament, P.C. by Marc A. Pergament, Seth M. Choset, Garden City, New York, for debtor.

Dennis C. Vacco, Attorney General for State of New York, Department of Taxation and Finance by David Cook, New York City.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This is an appeal from two decisions of United States Bankruptcy Judge Dorothy Eisenberg dated October 28, 1994 and May 19, 1995. These appeals arise out of a tax assessment by the New York State Department of Taxation and Finance ("Department of Taxation" or the "State") on the sales of cooperative units by the Debtor–Appellant, E. Thomas Williams, Jr. ("Williams"). According to the Department of Taxation, as a result of such sales Williams owes the State of New York $2,535,389.92 under the New York State Real Property Gains Tax, N.Y. Tax Law, art. 31–B § 1440 *et seq.* (the "Gains Tax"). The issue on appeal is whether the Department of Taxation's claim is entitled to a priority status under 11 U.S.C. § 507(a)(8)(A), or is a general unsecured claim.

*Background*

Although the facts reported in the Bankruptcy Court's decision, *In re Williams,* 173 B.R. 459, 460 (Bankr.E.D.N.Y.1994), are not entirely consistent with those recited in the Debtor's brief on appeal, they are set forth here in relevant part. Some time between October 1982 and March 1983, the Debtor purchased approximately 690 apartments in a cooperative apartment building or apartment complex known as Fordham Hill in the Bronx. Williams then began selling the units. The sales continued until July 1991.

On October 18, 1989, the Department of Taxation issued a Statement of Proposed Audit Adjustment (the "October 18 Statement") with respect to the sales of the Fordham Hill units to that date. The October 18 Statement provided that the Debtor owed the State the principal sum of $1,101,247 in Gains Taxes as a result of the sales. In addition, apparently in response to requests contained in the Statement, on October 30, 1989, Williams supplied the State with information that enabled the Department of Taxation to issue a second Statement of Proposed Audit Adjustment on November 14, 1990 based on actual audit results.

On January 25, 1991, the Department of Taxation sent the Debtor a Notice of Determination (the "Notice") as the State's final assessment of the tax liability. The Notice provided that the assessment would be deemed final on April 25, 1991 if no response was filed. Williams did not file a Petition for a Tax Appeals Hearing. However, on April 24, 1991, he filed a Request for a Conciliation Conference because he questioned the method applied to calculate the Gains Tax due. On March 11, 1992, a conference was held between the Debtor and the Department of Taxation and on July 10, 1992 a Conciliation Order was issued sustaining the original assessment.

However, on July 8, 1992, an involuntary bankruptcy petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code. On September 8, 1992, Williams converted his involuntary Chapter 7 petition to a voluntary petition under Chapter 11. A creditors committee has not yet been appointed.

In June 1993, the Debtor filed a proposed plan of reorganization providing for 100 percent payment to priority creditors and 10 percent payment to general unsecured creditors. The Department of Taxation sought $2,535,389.92 for the unpaid Gains Tax on the grounds that it is entitled to priority status under 11 U.S.C. § 507(a)(8)(A) of the Bankruptcy Code. On September 8, 1994, Williams made two motions before the Bankruptcy Court to reclassify the Gains Tax as a general unsecured claim. In two decisions issued on October 28, 1994 and May 19, 1995, the Bankruptcy Court denied the Debtor's motions. Williams subsequently filed appeals of both decisions which were consolidated into a single appeal by order of this Court.

*Discussion*

■ The District Court has appellate jurisdiction over this case pursuant to 28 U.S.C.

§ 158(a). *See, e.g., In re Sanshoe Worldwide Corp.,* 139 B.R. 585, 590 (S.D.N.Y.1992), *aff'd,* 993 F.2d 300 (2d Cir.1993). While the Bankruptcy Court's findings of fact may not be set aside unless clearly erroneous, decisions of law are reviewed *de novo. See, e.g., In re Momentum Manufacturing Corp.,* 25 F.3d 1132, 1136 (2d Cir.1994); *In re PCH Associates,* 949 F.2d 585, 597 (2d Cir.1991); *Crysen/Montenay Energy Co. v. E & C Trading, Ltd. (In re Crysen/Montenay Energy Co.),* 166 B.R. 546, 549 (S.D.N.Y.1994).

Williams appeals from the Bankruptcy Court's decision on three alternative grounds: (1) section 507(a)(8)(A) is inapplicable because there was a "final assessment" on April 25, 1991, over one year before the involuntary Chapter 7 petition was filed; (2) section 507(a)(8)(A) does not afford a priority status to the Gains Tax in any event; and (3) the Gains Tax is unconstitutional as it violates the equal protection clauses of the United States and New York Constitutions.

The priority of claims against a bankrupt estate is set forth under the Bankruptcy Code at 11 U.S.C. § 507. Pursuant to section 507(a)(8), the following claims receive a priority status:

> Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
>> (A) a tax on or measured by income or gross receipts—
>>
>>> (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due including extensions, after three years before the date of filing the petition;
>>>
>>> (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
>>>
>>> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after the commencement of the case.

11 U.S.C. § 507(a)(8). As a preliminary matter the Court notes that during the course of this litigation, the Bankruptcy Code was amended so that what was previously designated as section 507(a)(7) is now section 507(a)(8). However, the substance of this section was not amended. For the sake of clarity, the Court will refer to this section as 507(a)(8) throughout this decision.

█ The Gains Tax, enacted as part of a larger tax package to raise state revenues, *see Trump v. Chu,* 65 N.Y.2d 20, 23, 489 N.Y.S.2d 455, 457, 478 N.E.2d 971, 973 (1985), applies a ten percent tax rate to the gain on transfers of real property where the consideration paid is $1 million or more. N.Y.Tax Law §§ 1441(1), 1443(1). The gain is the difference between the actual selling price and the original purchase price with some adjustments not relevant here. N.Y.Tax Law § 1440(3). For the purpose of determining whether the $1 million threshold had been met, the sales of units pursuant to a cooperative or condominium plan are aggregated, N.Y.Tax Law § 1440(7)(b)(iii); *see also Albe Realty Co. v. Tax Appeals Tribunal of New York (In re Albe Realty Co.),* 194 A.D.2d 838, 598 N.Y.S.2d 602 (3d Dept.1993), while improved residential subdivisions other than those transferred pursuant to a cooperative or condominium are treated as individual transactions with certain exceptions not relevant here. N.Y.Tax Law § 1440(7)(b)(iv)(B).

### (i) *The final assessment*

█ Williams argues that section 507(a)(8)(A) is inapplicable because under subsection (ii), for a tax "on or measured by income or gross receipts" to obtain priority status, the claim must be assessed within 240 days of filing the petition. 11 U.S.C. § 507(a)(8)(A)(ii); *see also· In re Coleman American Moving Servs., Inc.,* 20 B.R. 267, 269 (Bankr.D.Kan.1981). Therefore, according to the Debtor, taxes assessed more than eight months before the bankruptcy petition is filed are not entitled to priority status. *See In re Blank,* 137 B.R. 671, 673 (Bankr. N.D.Ohio 1992); *In re King,* 122 B.R. 383, 385 (9th Cir. BAP 1991), *aff'd,* 961 F.2d 1423

(9th Cir.1992). Accordingly, the crucial point in this regard is to determine the date of final assessment.

The Debtor contends that the Gains Tax assessment became a final assessment on April 25, 1991, in accordance with the Notice of Determination. On January 25, 1991, the Debtor was sent a Notice of Determination by the Department of Taxation which alerted him as to the State's assessment of his tax arrears in the amount of $2,315,627.09. The Notice also provided that "[i]f we do not receive *a response* to this notice by 4/25/91: [t]his notice will become finally and irrevocably fixed and subject to collection action" (emphasis supplied).

The Debtor did not appeal in response to the Notice. Rather, he requested a Conciliation Conference to "properly ascertain the penalty owed to the Department of Taxation." Williams argues that this distinction is critical because the request for a Conciliation Conference was tantamount to an admission of liability sufficient to render the assessment final on April 25, 1991, and therefore beyond the purview of section 507(a)(8)(A)(ii).

■ The Bankruptcy Court disagreed, and that determination is now affirmed. As the Bankruptcy Court correctly recognized, in order to make a determination as to the date of a tax assessment, an analysis of the relevant tax code provisions is required. *See In re King,* 122 B.R. at 385. According to the N.Y.Tax Law, § 1444(1), a determination of tax liability shall become final within ninety days after the issuance of a Notice of Determination unless a petition is filed with the Division of Tax Appeals ("DTA") for a hearing. Under section 170(3–a)(b), a request for a Conciliation Conference "shall suspend the running of the period of limitation for the filing of a petition protesting [the] notice [of determination] and requesting a hearing." N.Y.Tax Law § 170(3–a)(b).

■ Williams' Notice of Determination instructed him to file any response by April 25, 1991. On April 24, 1991, the Debtor filed a request for a Conciliation Conference, which under N.Y.Tax Law suspends the limitation period for filing a petition for appeal. Section 170(3–a)(b) does not make distinctions based on whether the taxpayer contests the method of calculation as opposed to the liability itself. Accordingly, the Court finds that no distinction exists and the request for the Conciliation Conference tolled the period for having the tax assessment deemed final.

■ On July 10, 1992, a Conciliation Order was issued. Such an order becomes binding unless the taxpayer files a petition for review with the DTA within ninety days after issuance. The Debtor filed a petition for a hearing with the DTA on October 8, 1992, the last day of the ninety day period. However, the petition was filed after the bankruptcy petition which stayed the proceeding under 11 U.S.C. § 362(a) and precluded the Department of Taxation from proceeding further. Accordingly, the tax assessment never became a final assessment because the requirements of section 507(a)(8)(A)(ii) to obtain priority status were satisfied.

This result is also consistent with the January 25, 1991, Notice of Determination sent to Williams by the Department of Taxation. According to the Notice, as discussed above, the determination would become final unless *a response* was received before April 25, 1991. The Debtor sent *a response* on April 24, 1991. The fact that the response requested a Conciliation Conference as opposed to an appeal is not dispositive. Therefore, it is logical to conclude, not only that the determination was not final as a matter of law under N.Y.Tax Law, § 170(3–a)(b), but that Williams knew that his response would preclude the assessment from becoming final.

Accordingly, the decision of the Bankruptcy Court is affirmed on this ground. *Cf. In re General Development Corp.,* 165 B.R. 691, 695 (S.D.Fla.1994) (holding that the tax assessment was not final since the taxpayer protested the tax allegedly owed).

(ii) The applicability of section 507(a)(8)(A) to the New York *Gains Tax*

■ The Debtor argues, in the alternative, that section 507(a)(8)(A) does not apply to the New York Gains Tax. Section 507(a)(8)(A) applies to "a tax on or measured by income or gross receipts." Williams ar-

336

gues that the Gains Tax does not meet this definition for several reasons.

▮ Initially, the Debtor contends that, in accordance with two opinion letters issued by the Department of Taxation's Law Bureau on September 21, 1983, and November 14, 1983, the Gains Tax is a transfer tax, distinguishable from both a property tax and an income tax, *see In re 995 Fifth Avenue Associates, L.P.,* 116 B.R. 384, 394–98 (Bankr.S.D.N.Y.1990) (Appendix), *aff'd,* 127 B.R. 533 (S.D.N.Y.1991), *aff'd in part, rev'd in part,* 963 F.2d 503 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992), and therefore not covered by section 507(a)(8)(A). This distinction is based on three grounds. *First,* income taxes are levied on net gain, while the Gains Tax is assessed against individual transactions. Therefore, pursuant to the Gains Tax, a loss on one transaction cannot be applied to offset the gain on a second transaction, and a taxpayer could be liable for a Gains Tax in a year when he had no net income. *Second,* the Gains Tax is not an income tax because it does not fall under the list of taxes specified under the Internal Revenue Code sections 164 and 212. I.R.C. §§ 164, 212. *Finally,* the Gains Tax does not qualify as a property tax because the Gains Tax is assessed against the transfer of the property as opposed to ownership of the property itself.

Williams then argues that the case law and legislative history further demonstrate that the Gains Tax was never intended to be treated as an income tax. In support of this argument, the Debtor claims that the New York State Legislature intentionally entitled article 31–B of the New York Tax Law, as "Tax on Gains Derived from Certain Real Property Transfers," without any reference to the word "income" in an effort to avoid suggesting that the Gains Tax was indeed an income tax. In addition, the Gains Tax is applicable to transfers of over $1 million, as opposed to a more graduated tax structure such as the one imposed on income under the familiar provisions of the Internal Revenue Code. *See* N.Y.Tax Law § 1442.

In addition, the Debtor contends that courts addressing the question of whether the Gains Tax is a stamp or similar tax under the Bankruptcy Code, *see In re 995 Fifth Avenue Assocs., L.P.,* 963 F.2d 503 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992), or a transfer tax under the New York Eminent Domain Procedure Law ("N.Y.EDPL"), *see Heller v. State,* 180 A.D.2d 299, 585 N.Y.S.2d 579 (3d Dept.1992), *aff'd,* 81 N.Y.2d 60, 595 N.Y.S.2d 731, 611 N.E.2d 770 (1993), have been wary of labeling the Gains Tax as "a tax on or measured by income."

In *995 Fifth Avenue,* the Second Circuit held that the Gains Tax was not a "stamp tax or similar tax" as that term is applied in 11 U.S.C. § 1146(c), which would exempt the debtor from paying the tax. *995 Fifth Avenue,* 963 F.2d at 513. However, the court explicitly refused to consider whether the Gains Tax was an income tax. *Id.*

In determining that the Gains Tax was not a transfer tax under the N.Y.EDPL 702(A)(1), the *Heller* court found that the Gains Tax is "in the nature of an income tax." *Heller,* 180 A.D.2d at 301, 585 N.Y.S.2d at 581; *see also In re Jacoby–Bender, Inc.,* 40 B.R. 10, 15 (Bankr.E.D.N.Y.1984), *aff'd,* 758 F.2d 840 (2d Cir.1985) (interpreting Gains tax statute and recognizing that [c]apital gains taxes ... are income taxes), *citing,* 71 Am.Jur.2d *State and Local Taxation* § 557 (1973). The court in *Heller* reasoned that the Gains Tax is neither "incidental" nor an "expense" incurred in connection with the transfer of property. *Id.* Rather, the Gains Tax is computed as ten percent of the gain attributed to the sale, far more than the limited rates imposed for stamp or transfer taxes. *Id., citing, 995 Fifth Avenue,* 963 F.2d at 513. Moreover, while the transfer of the property triggers the imposition of the tax, it is computed as a function of the gain, rather than the total consideration received for the property, a method of calculation closer to an income tax than a transfer tax.

The Debtor argues that these decisions support his argument because in neither case did the court go so far as to label the Gains Tax as "a tax on or measured by income." The Bankruptcy Court rejected these arguments, and this Court concurs.

In this Court's view, the Debtor misinterprets the Bankruptcy Code, the Gains Tax statute and the case law. Section 507(a)(8)(A) applies to "a tax on or measured by income or gross receipts." 11 U.S.C. § 507(a)(8)(A). Significantly, it does not apply to an "income tax." This distinction, although not further elaborated on in the statute, is supported by the pertinent legislative history of the Bankruptcy Code, which demonstrates that the priority established in section 507(a)(8)(A) (then numbered, section 507(a)(6)(A)) "is given to income taxes *and other taxes.*" S.Rep. No. 95–989, 95th Cong., 2d Sess. at 70 (1978) *reprinted in* 1978 U.S.C.C.A.N. pp. 5787, 5856 (emphasis supplied). The Senate Report's reference "to other taxes" encompassed by the priority clearly indicates that even if the Gains Tax is not an income tax, it may still have a priority status under the Bankruptcy Code to the extent that it is on or measured by income. Accordingly, the opinion letters issued by the Department of Taxation which classify the Gains Tax as a transfer tax rather than an income tax and the New York State Legislature's failure to name the Gains Tax as an income tax, without additional proof, are insufficient to demonstrate that the priority contained in section 507(a)(8)(A) is inapplicable to the Gains Tax at issue.

The only other precedent that the Debtor offers are the *995 Fifth Avenue* and *Heller* cases, *supra*, which do not justify his conclusion. In *995 Fifth Avenue*, while the Second Circuit refused to rule on whether the Gains Tax is an income tax, it did enunciate several instructive points worth reviewing. Specifically, the court found that the Gains Tax was a function of profit, and if there is no profit on the transaction, there is no tax. *995 Fifth Avenue*, 963 F.2d at 513. Moreover, it is the profit on the sale rather than the consideration paid which is determinative of the amount of the tax. *Id.* Finally, the Gains Tax rate is ten percent, far more than most stamp and documentary transfer taxes which are usually a fraction of one percent.

In *Heller*, the Third Department, in a decision affirmed by the New York Court of Appeals, found that the Gains Tax was more "in the nature of an income tax" than a transfer tax. In reaching this conclusion, the court, relying in part on *995 Fifth Avenue*, also found that the Gains Tax was a tax on the difference between the original purchase price and the sale price, *i.e.*, profit, and that the ten percent rate was too large to be considered a transfer tax. *Heller*, 585 N.Y.S.2d at 581. The Debtor's interpretation of this conclusion is as follows:

While the court identified the characteristics of the [Gains] Tax as being similar to a tax on or measured by income, it never held that the tax is a tax on or measured by income. The [c]ourt's apparent hesitation in defining the [Gains] Tax as a tax on or measured by income indicates the [c]ourt's belief that the Legislature did not intend the tax to be a tax on or measured by income. Debtor–Appellant's Mem. of Law in Support at 12.

■ The Debtor's reading of *Heller* is incorrect. The Bankruptcy Code was not at issue in *Heller*. Further, the Debtor appears to rely on the Appellate Division's failure to classify the Gains Tax within the language contained in section 507(a)(8)(A) as an indication that section 507 does not apply. The Court disagrees. Both the *995 Fifth Avenue* and *Heller* decisions indicate that the Gains Tax is a function of profit. As the Bankruptcy Court correctly recognized, "income" is generally defined as "the return in money from one's business, labor, or capital invested; *gain, profits*, salary, wages, etc." *Black's Law Dictionary* 763 (6th ed. 1990). Applying these definitions, the Court holds that because "income" and the Gains Tax are both functions of profit, *see 995 Fifth Avenue, supra*, the Gains Tax, although it may not be an "income tax" in the traditional sense, is one of those "other taxes" contemplated by Congress that qualifies as "a tax on or measured by income" under section 507(a)(8)(A). *Cf. Jacoby–Bender, supra.* Accordingly, the decision of the Bankruptcy Court on this ground is affirmed.

(iii) *The Gains Tax and the equal protection clause*

■ The Debtor also presents a new argument on appeal, not previously brought before the Bankruptcy Court. Specifically,

Williams contends that the Gains Tax violates the equal protection clauses of the United States and New York constitutions (the "equal protection clause"). *See* U.S. Const. amend XIV; N.Y. Const. art. I, § 11.

As discussed above, the Gains Tax imposes a ten percent tax on all gains from real estate transfers where the consideration paid is $1 million or more. Gains are calculated as the difference between the selling price and the original purchase price. The Debtor argues that this tax structure violates the equal protection clause because it draws a distinction between investors in condominium and cooperative developers on the one hand, and investors in other vehicles such as publicly traded stocks on the other. Williams contends that the Gains Tax unlawfully discriminates against the investors in cooperative developments because it prohibits them from offsetting their gains and losses when calculating the $1 million threshold while the investors in stocks may offset their gains and losses when computing income taxes.

As the Debtor correctly recognizes, any equal protection analysis of the Gains Tax must begin with the seminal case of *Trump v. Chu*, 65 N.Y.2d 20, 489 N.Y.S.2d 455, 478 N.E.2d 971, *appeal dismissed*, 474 U.S. 915, 106 S.Ct. 285, 88 L.Ed.2d 250 (1985). In that case, the plaintiffs, as real estate developers, argued that the Gains Tax was unconstitutional under the equal protection clause because it creates arbitrary classifications between: (1) those who sell their realty for $1 million or more as opposed to a lesser amount; and (2) those who are condominium/cooperative developers who might aggregate their sales when calculating the $1 million threshold, as opposed to developers of subdivided plots, who do not.

In analyzing the constitutionality of the Gains Tax, the New York Court of Appeals recognized that economic legislation such as the Gains Tax "must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose." *Id.*, 65 N.Y.2d at 25, 489 N.Y.S.2d at 458, *citing, Western & S. Life Ins. Co. v. Board of Equalization*, 451 U.S. 648, 657, 101 S.Ct. 2070, 2077, 68 L.Ed.2d 514 (1981). Moreover, economic legislation that does not discriminate on the basis of a suspect class, enjoys a presumption of constitutionality which may be overcome only by establishing that the classification is "hostile and oppressive[ly] discriminat[es] against particular persons or classes." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). When enacting tax laws, the legislature is not required to maintain a precise, scientific uniformity with reference to composition, use or value as long as the outcome provides a reasonable system of taxation. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973). Accordingly, the State legislature is not precluded from drawing lines that treat individuals or classes of people differently unless the treatment is "palpably arbitrary" or constitutes "invidious discrimination." *Allied Stores v. Bowers*, 358 U.S. 522, 527–28, 79 S.Ct. 437, 441–42, 3 L.Ed.2d 480 (1959).

Applying these standards, the New York Court of Appeals found the Gains Tax to be constitutional. The court reasoned that the division between purchases of real property for over $1 million and those for lesser sums was rationally related to a legitimate state interest. In reaching its decision, the court found it conceivable that the State Legislature's concern that imposing the tax on smaller purchases would be economically counterproductive because the administrative burden of imposing such taxes might outweigh the revenue received.

The New York Court of Appeals also rejected the argument based on the distinction between the cooperative and condominium developers as opposed to investors in subdivided realty. In finding the distinction rationally related to a legitimate state interest the court focused on three factors. *First,* condominium and cooperative developments involve greater administrative costs to regulate as a result of the special laws which apply to them. *Second,* because condominium and cooperative developments are more likely to be found in urban areas than subdivisions, these developments are more likely to make greater demands on public services. *Finally,* treating sales of condominium and cooperative units as separate tax transactions

would entail much greater administrative costs which would in turn reduce the net revenue produced by the tax. *See Trump, supra,* 65 N.Y.2d at 28, 489 N.Y.S.2d at 461, 478 N.E.2d at 977. Accordingly, the Gains Tax withstood the equal protection challenge.

In reaching this conclusion, the New York Court of Appeals distinguished the cases relied upon by the defendants, *Stewart Dry Goods Co. v. Lewis,* 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054 (1935) and *Merit Oil v. State Tax Comm'n,* 111 Misc.2d 118, 443 N.Y.S.2d 604 (Sup.Ct.Albany 1981). In both *Stewart* and *Merit Oil,* taxes were imposed on gross receipts based on the reasoning that companies with larger sales could afford to pay more in taxes. In those cases, the courts struck down the statutes because they imposed taxes without any consideration for profits. The Gains Tax however, as discussed above, is clearly based on profits because the tax is assessed only against the amount of consideration received in the sale less the original purchase price. *See Trump,* 65 N.Y.2d at 26–27, 489 N.Y.S.2d at 460, 478 N.E.2d at 976. As a result, the Gains Tax passed constitutional muster pursuant to the rational relation test, especially in light of the extra latitude afforded legislatures enacting tax laws. *Id.* at 25, 489 N.Y.S.2d at 458, 478 N.E.2d at 974.

Despite the definitive rulings in *Trump,* the Debtor argues that *Stewart* and *Merit Oil* rather than *Trump,* should apply to this case. Williams asserts that *Trump* is distinguishable because in that case the plaintiffs were condominium developers as opposed to real estate investors. The Debtor argues that the Gains Tax penalizes him for choosing to invest in shares of a cooperative development rather than shares of stock. Williams reasons that an investor in stock is permitted to offset his gains and losses for income tax purposes while an investor in a cooperative cannot under the Gains Tax. Accordingly, two similarly situated investors are treated differently merely because they choose to invest their money in different vehicles.

The Court rejects this distinction. As stated above, a State Legislature is afforded wide latitude in developing a scheme of taxation, *see Lehnhausen, supra,* and such a scheme will not be upset unless it is determined to be "palpably arbitrary" or constitutes "invidious discrimination." *See Allied Stores, supra.* Moreover, "it is difficult to conceive of an area in which the state has a more substantial, legitimate interest in regulation, than in the area of real property law." *King v. James,* 1991 WL 255110 \*5, 1991 U.S. Dist. LEXIS 17332 \*17 (N.D.N.Y. 1991) (analyzing the significance of significance of real property law in determining whether to abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

Applying these standards, the Court finds that while the Gains Tax does distinguish between investors in shares of a cooperative development as opposed to investors in shares of common stock, this distinction is not sufficient to overcome the presumption of constitutionality afforded to economic legislation which does not discriminate on the basis of a suspect class. Accordingly, the Court finds that Gains Tax is constitutional.

*Conclusion*

After reviewing the case file and the papers submitted, and hearing the oral arguments of both parties, and for the reasons set forth in the record, it is hereby

ORDERED, that both decisions of the Bankruptcy Court are affirmed in all respects.

SO ORDERED.