In the Matter of DOWNTOWN ATHLETIC CLUB OF NEW YORK CITY, INC., et al., Petitioners, against STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, June 13, 1952.

*Raymond B. Seymour* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *Philip J. Fitzgerald* of counsel), for respondent.

BERGAN, J.   In October, 1947, the Downtown Athletic Club of New York City, Inc., being in possession of real and personal property on West Street entered into an agreement of purchase with the owner the General Realty and Utilities Corporation.

The gross purchase price was $2,050,000 of which $1,750,000 was for the real property.   The contract gave the purchaser the right to possession of the real and personal property '' in the operation of its normal functions as a social and athletic club '' and to continue such occupation and use while it was not in default.   The contract was not recorded.

The club assigned its interest in the contract to its subsidiary the Nineteen West Street Corporation and the conditions of the contract in respect of the conveyance of the real property having been met, a deed dated May 5, 1950, was delivered to the club's assignee.

This was offered for recording to the Register of the City of New York.   He refused to record it unless the mortgage recording tax be paid on the contract of sale '' whether or not '' that contract were recorded.

On a review of this decision the State Tax Commission decided: (a) that the contract of sale was a mortgage under section 250 of the Tax Law, and determined that the amount unpaid thereon within the meaning of the section was $1,700,000; and (b) that the Register was right in refusing to record the deed '' unless and until '' the contract of sale '' is first recorded and the mortgage recording tax imposed thereon '' is paid.   That determination is reviewed by this proceeding.

The question is one of statutory construction.   The Tax Law, which employs in article 11 the term '' tax on mortgages '', directs that a tax at the rate of fifty cents for each one hundred dollars of the debt or obligation '' is hereby imposed '' on each of the '' mortgages '' coming within the scope of its definitive terms.   (§ 253.)

"Executory contracts for the sale of real property" under which the "vendee has or is entitled to possession" are "deemed to be mortgages" for the purposes of the tax provided by article 11 (§ 250).

The section by which the tax is imposed (§ 253) carried the headnote "Recording tax". While it imposes the tax directly on "each such mortgage", collection of the tax is "as provided in this article". When reference is then made to the manner of collection contained in section 257, it is seen that the taxes "imposed by this article" are "payable on the recording of" the mortgages affected.

It is thus to be seen that in effect, if not in all its precise terms, the statute imposes the tax on the recording of the instrument and not on the making or existence of it. It had been a judicial view of rather long standing that this tax related only to mortgages "offered for record". (*Matter of Mechanics' Bank*, 156 App. Div. 343, 347.)

It seems to have been the possibility that the statute could be regarded as a tax on the recording of instruments rather than as a tax imposed directly on the instruments themselves, considered as personal property, that saved this tax from the constitutional proscription of 1938. (*Franklin Society* v. *Bennett*, 282 N. Y. 79.)

In that case, decided in 1939, the court had before it the effect on this tax of the amendment to the Constitution in 1938 prohibiting both an *ad valorem* tax on intangible personal property and an excise tax levied solely because of the ownership or possession of such property. (N. Y. Const., art. XVI, § 3.)

The validity of the tax, it was said, turned on whether it could be "labelled or classified" as a "recording tax" which did not fall within the express interdiction of the Constitution, or whether it was a tax on the personal property itself. The constitutional conflict, and hence the invalidity of the tax, was avoided by regarding the tax as one on the recording of the instruments affected. In some part the decision rested on the way the courts had regarded the tax before the 1938 amendment (p. 87).

It is rather clear from the discussion of the subject in the opinion written by Judge Lehman that if the statute had to be construed as a direct tax imposed on mortgages without reference to recording, it would be invalid. Thus, the view taken by the Register that the deed which petitioner offered him could not be received for recording unless the tax was paid on the executory contract of sale "whether or not" that contract was

recorded, would suggest an operational effect of the tax statute which would have brought it in conflict with the constitutional proscription against a tax on personal property.

The Tax Commission, however, took the different view that the tax was imposed on the recording of the contract and that the deed should not be recorded until the contract also had been recorded and the tax paid. If the contract had been recorded there is no doubt that the recording tax would have been payable, since the statute as we have seen, defines an executory contract for the sale of real property by which the vendee has the right of possession as a " mortgage ". (§ 250.)

But at the time the deed was offered for recording, the contract of sale was no longer an executory contract. It had been fully executed as far as it related to the transfer of real property, by the giving and taking of the deed. There was then no statutory or other legal requirement on the vendee to record the contract, nor was there any such obligation during the executory period of the contract. It was only if the benefit of the protection of the recording act, whatever it might be, was sought by the vendee that recording was necessary.

Where there is an applicable recording tax, if a man wants to record an instrument he pays the tax; if he does not want to record it he takes the consequence of a lack of public record; but he does not pay the tax. The reasons underlying this choice as related to this kind of a tax are discussed in *Franklin Society* v. *Bennett* (282 N. Y. 79, 86, *supra*).

The crucial point in this proceeding, therefore, is whether the Tax Commission was right in imposing the recording of the contract of sale and the payment of the tax thereon as a condition for the recording of the deed of conveyance. The deed is absolute on its face and makes no reference to the contract of sale or to any indebtedness. It would require very explicit language in a tax statute to sustain such a requirement, and we do not find that kind of language.

We turn then to section 258 which provides for the effect of " nonpayment of taxes ". It directs that " No mortgage of real property which is subject to the taxes imposed " by the article shall be " released " or " discharged of record " or " received in evidence " unless the " taxes imposed thereon " by the article shall have been paid.

But this, of course, refers not to the mere existence of a mortgage, but to a mortgage which has been recorded, because it is only as to the recording that the taxes " imposed by this article " would be valid constitutionally, and hence it is such

a mortgage so recorded that is meant to be described as " subject to the taxes " imposed.

It seems to be argued additionally by the commission that the unrecorded contract of sale being treated as a mortgage, and the deed, which consummated the contract, being treated as a " release " of the mortgage, the " release " would be prohibited unless the tax on the mortgage was paid.

This argument assumes that an unrecorded mortgage would be directly taxable since it would be unlawful to " release " it even though neither mortgage nor release ever were offered for recording. But if an unrecorded mortgage cannot be " released " without payment of a tax, not on the " release " but on the mortgage, as the commission argues, the effect would be to treat the tax as one directly imposed on the mortgage and would call up the constitutional objections considered in *Franklin Society* v. *Bennett* (*supra*).

It is not suggested by the commission that the deed is taxable as a " release " when recorded and, indeed, the consummation of a contract of sale by performance according to its terms is not a " release " of the contract in the sense in which the term " release " of a mortgage on real property is used in section 258. Furthermore, as we have noted, when the deed was offered for recording there was no " executory " contract of sale in existence. What the statute means by " discharged of record " in section 258 has no reference to the case presented here.

We are of opinion that the commission was without authority under the statute to direct that the deed offered for recording be refused by the Register for that purpose unless the contract be recorded and the recording tax paid on it.

The determination should be annulled, with $50 costs and disbursements.

Foster, P. J., Heffernan, Brewster and Coon, JJ., concur.

Determination annulled, with $50 costs and disbursements.