## In re Hans B. CANTRUP and June Allen Moss Cantrup, Debtors.

### Bankruptcy No. 83 B 1161 G.

United States Bankruptcy Court, D. Colorado.

Sept. 26, 1985.

---

\* \* \* \* \* \*

Holme, Roberts & Owen, Denver, Colo., for debtor.

Sherman & Howard, James B. Holden, Denver, Colo., for Spencer Schiffer, Chief Executive Officer.

Frascona, McClow & Joiner by Oliver E. Frascona, Boulder, Colo., for City of Aspen.

### ORDER RE REAL ESTATE TRANSFER TAX

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the Court for determination of whether the transfer of properties under the Plan of Reorganization is or is not exempt from the City of Aspen's Real Estate Transfer Tax.

A Plan of Reorganization was confirmed on March 14, 1985.

Paragraph 4.1 of that Plan provides for the sale of certain real property pursuant to that certain definitive agreement between the Cantrup estate and Commerce Savings Association of Angleton, Texas. The Plan further provides, in Paragraph 4.3, for the distribution of proceeds of this sale to holders of various claims and interests. One parcel of the estate's real property has yet to be transferred to Commerce Savings or its assignee, Aspen Mountain Joint Venture. This parcel, located at 925 Durante, Aspen, Colorado, is held by Spencer Schiffer, the Chief Executive Officer for the estate of Hans and June Cantrup, Debtors in possession, in trust for the creditors of the estate. Upon liquidation of this real property, the proceeds are to be distributed to creditors in accordance with the terms provided in the Plan. Other properties are likewise being transferred pursuant to the definitive agreement as a part of the Plan of Reorganization. One single family home site lot at the Aspen Meadows is the subject of a written commitment from Aspen Mountain Joint Venture to Spencer Schiffer to be held in trust for the estate's creditors. This conveyance will be completed following subdivision approval, after which time the interest is to be liquidated and distributed to creditors in accordance with the terms of the Plan.

Schiffer seeks an order from this Court determining that these transactions are exempt from the City of Aspen's Real Estate Transfer Tax, set forth in § 1 of Ordinance No. 20, series of 1979, of the City of Aspen, Colorado. The basis for this allegation is that 11 U.S.C. § 1146(c) prohibits the imposition of a stamp tax or a similar tax on the making or the delivery of instruments of transfer under a Plan of Reorganization. Specifically, that section provides:

> The issuance, transfer, or exchange of a security, of the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

The City of Aspen takes the position that its real estate transfer tax ordinance applies to any and all transfers of real property under the Plan confirmed in this case. The basis of this assertion is that the City of Aspen tax is not a true stamp tax and that the grantee, not the estate, will be liable for the tax under the ordinance. The City argues that its tax is not on the "making or delivery" of an instrument of transfer but, rather, is a tax on the grantee who accepted the deed and presents it for recording. Thus, the City seeks to have this Court find that 11 U.S.C. § 1146(c) does not preempt the ordinance, and that the City

has the right to impose and collect the tax on all transfers of real property of this estate, whether such transfers have already occurred or are about to occur under the Plan of Reorganization confirmed by this Court.

## CONCLUSIONS OF LAW

█ The City's argument that its real estate transfer tax is not a stamp tax may be disposed rather summarily Section 1146(c) of the Bankruptcy Code is modeled after Section 267 of the Bankruptcy Act, which had exempted any security or transfer instrument provided for under a confirmed Chapter X Plan from any state or federal stamp tax. *City of New York v. Jacoby-Bender, Inc.*, 758 F.2d 840 (2nd Cir. 1985). As pointed out by the Second Circuit court, § 1146(c) of Title 11 broadens this exemption to any stamp tax or "similar tax" on an instrument of transfer under a confirmed Chapter 11 Plan. This is borne out by the legislative history. See H.R.Report No. 595, 95th Congress, 1st Sess. 281 (1979), reprinted in 1978 U.S. Code Cong. & Adm.News 5787, 5963, 6238.

The tax imposed by the City of Aspen appears to meet the criteria for a stamp tax set forth *In Re: Jacoby-Bender Inc., supra,* 40 B.R. 10 (Bankr.E.D.N.1984), affirmed *In Re: Jacoby-Bender Inc., supra.* "The essential common element of stamp taxes is the imposition of the tax upon a written instrument representing a transfer or sale." *In re Jacoby-Bender,* 40 B.R. 10, *supra,* at p. 14.

Assuming the tax herein involved were not, technically, a "stamp tax", it is certainly a "similar tax", as contemplated in 11 U.S.C. 1146(c).

█ The second argument proffered by the City of Aspen, that Section 1146(c) does not exempt the purchaser or transferee from liability for having accepted a deed and presenting it for recording, has some support in one reported decision. *See, Lake v. Gleeson,* 11 Pa.D. & C.2d 584 (Pa. 1956). There, the Court considered the effect of § 267 of the Bankruptcy Act on a realty transfer tax imposed by the State of Pennsylvania. The Court concluded that, while the Trustee in Bankruptcy could not be made liable for the tax for "making or delivery of instruments of transfer", nothing in the Bankruptcy Act relieved the grantee who *"accepted* and the deed and *presented* it for recording". *Id.* at 586.

The Court went on to state as follows: "It is no detriment to an insolvent's estate to impose a tax on a solvent purchaser of assets". *Id.* at 586. I disagree. Further, the later decision in *In Re Jacoby-Bender Inc., supra,* appears likewise to disagree. Certainly the price achieved by an estate's sale to a purchaser can be greatly affected by whether a substantial transfer tax will be imposed or not. I also note that the Second Circuit indicated that § 267, after which § 1146(c) of the Code is patterned, "related to *transactions,* ... 'which serve to execute or make effective a plan confirmed under Chapter X.'" (emphasis supplied) *In Re Jacoby-Bender Inc.,* 758 F.2d 840 (2d Cir.1985), at p. 842.

Thus, I conclude that, while the City's argument has initially a certain ingenius, abstruse and abstract intellectual appeal, it fails to make a practical distinction. The exemption provided for in § 1146(c) was intended to apply to the making or delivery of an instrument of transfer, whether presented for recording by the grantor or the grantee. If either is taxed, it results in a taxation on the making or delivery of an instrument of transfer. When such a transfer occurs pursuant to a Plan confirmed under § 1129 of the Bankruptcy Code, it is exempt from a stamp tax or similar tax.

Accordingly, it is my conclusion that the transfers herein involved are exempt from the City of Aspen's Real Estate Transfer Tax.