## In re AMSTERDAM AVENUE DEVELOPMENT ASSOCIATES, Debtor.

### Bankruptcy No. 88B–11786 (HCB).

United States Bankruptcy Court,
S.D. New York.

Aug. 11, 1989.

As Corrected Sept. 5, 1989.

Salomon, Green & Ostrow by Nicholas F. Kajon, New York City, for debtor.

Robert Abrams, Atty. Gen. of State of N.Y. by David S. Cook and Marcie S. Mintz, New York City.

Peter Zimroth, by Cornelius F. Roche, New York City, Corp. Counsel of City of New York.

## DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

This motion brought by the Debtor, Amsterdam Avenue Development Associates ("Amsterdam"), pursuant to section 1146(c) of the Bankruptcy Code, 11 U.S.C. § 1146(c) (1986), seeks an order exempting it from payment of New York State and City Real Estate Transfer Taxes, N.Y. Tax Law § 1402 and N.Y.C. Administrative Code II46–2.0 *as authorized* by N.Y. Tax Law § 1201 (McKinney 1988) (collectively the "Deed Taxes"), and exempting the purchaser of the Debtor's property from the payment of New York State and City Mortgage Taxes, N.Y. Tax Law §§ 253 and 253–a (McKinney 1988) (the "Mortgage Taxes").

The Commissioner of Finance of the City of New York, the City Register of the City of New York, and the Department of Taxation and Finance of the State of New York oppose the Debtor's motion on the grounds that the Mortgage Taxes are not "stamp taxes or similar taxes" and thus fall without the statutory tax exemption provided by section 1146(c) and that the section 1146(c) exemption was never intended by Congress to apply to solvent debtors. The City also opposes the motion on the grounds that the Second Circuit decision declaring that the Deed Taxes are "stamp taxes or similar taxes," *City of New York v. Jacoby–Bender*, 758 F.2d 840, Bankr.L. Rep. (CCH) ¶ 70357 (2nd Cir.1985), *affirming*, 40 B.R. 10 (Bankr.E.D.N.Y.1984), is erroneous and should not be followed by this Court.

## I.

The Debtor, a New York limited partnership, operated an 120 unit apartment building located at 850 Amsterdam Avenue. It filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 11, 1988 with the Bankruptcy Court for the Eastern District of New York. Venue was subsequently transferred to the Southern District of New York. Pursuant to its second amended joint plan of reorganization, confirmed by this Court on March 20, 1989, the Debtor sold the apartment building to West Side Associates ("West Side") for $5,440,000. The sale enabled the Debtor to satisfy all of its creditors' claims with interest in full, and in cash, on the effective date of its plan and to pay a dividend to its partners.

Title closed on May 1, 1988. At closing, West Side paid the entire purchase price in cash. To finance the purchase price, West Side obtained a loan of $3,750,000 from American Savings Bank, FSB ("Bank") secured by a first mortgage on the apartment building.

In an interim interlocutory order dated April 27, 1989, this Court, *inter alia,* directed the Register for the County of New York to record the prospective deed of the property from the Debtor to West Side and the prospective mortgage in favor of the Bank without payment of the Deed Taxes or Mortgage Taxes, provided that an escrow be established for the payment of the Mortgage Taxes. An escrow was established and the Register so recorded the deed and mortgage.

The taxes from which the Debtor seeks exemption are as follows:

(a) a New York State Tax of 1% on the recording of the $3.75 million mortgage, payable by West Side, New York State Mortgage Tax, N.Y.Tax Law § 253 (McKinney 1988) ("Mortgage Tax");

(b) a New York City tax of 1.25% on the recording of the above mortgage, payable by West Side, New York City Mortgage Tax, N.Y.Tax Law § 253–a (McKinney 1988) ("Mortgage Tax");

(c) a New York State tax of 0.4% on the recording of the deed transfering title to the real property, payable by the Debtor with West Side contingently liable in the event that the tax is not paid or the grantor is exempt from the tax, New York State Real Estate Transfer Tax, N.Y.Tax Law § 1402 (McKinney 1988) ("Deed Tax");

(d) a New York City tax of 2% on the recording of the above deed, payable in a like manner, New York City Real Estate Transfer Tax, N.Y. Administrative Code §§ II46–2.0, 2104 *as authorized by* New York Tax Law § 1201 (McKinney 1988) ("Deed Tax").

## II.

Section 1146(c) cryptically provides: "The issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of this title may not be taxed under any law imposing a stamp tax or similar tax." Thus, in order for a deed or instrument of transfer to qualify for this tax exemption, three criteria must be met: (a) the tax must be a stamp or similar tax, (b) imposed upon the making or delivery of an instrument transferring an interest in property, (c) in connection with a confirmed bankruptcy plan.

### A.

■ It is established that the New York State and City Deed Taxes levied upon a debtor's transfer of property to fund its confirmed reorganization plan meet the three pronged test of section 1146(c). *Jacoby–Bender,* 40 B.R. at 15; *accord In re Permar Provisions, Inc.,* 79 B.R. 530, 533 n. 5, 16 Bankr.Ct.Dec. (CRR) 928, Bankr.L. Rep. (CCH) ¶ 72105, 19 Collier Bankr. Cas.2d (MB) 1022 (Bankr.E.D.N.Y.1987); *City of New York v. Smoss Enter. Corp. (In re Smoss Enter. Corp.),* 54 B.R. 950, 951 (E.D.N.Y.1985); *see also, CCA Partnership v. Director of Revenue, State of Delaware (In the Matter of CCA Partnership),* 70 B.R. 696, 697, 15 Bankr.Ct.Dec. (CRR) 824 (Bankr.D.Del.), *aff'd,* 72 B.R. 765 (D.Del.1987), *aff'd,* 833 F.2d 303 (3rd Cir.1987); *In re Cantrup,* 53 B.R. 104, 106, Bankr.L.Rep. (CCH) ¶ 70795, 13 Collier Bankr.Cas.2d (MB) 682 (Bankr.D.Colo. 1985).

In *Jacoby–Bender,* the Bankruptcy Court, in a well reasoned opinion by Judge Hall, found that the Deed Taxes exhibit two of the essential characteristics of stamp taxes in that the amount of the tax is usually determined by the consideration cited in the document of transfer and that the taxes must be paid as a prerequisite to the document's recordation. *Jacoby–Bender,* 40 B.R. at 13. The taxes additionally share the remaining, but less important, qualities of stamp taxes: they provide easily ascertainable evidence of payment and

are charged on written instruments recognized in law as evidence of the enforcement of legal rights. *Jacoby–Bender,* 40 B.R. at 13.

On appeal, the Second Circuit affirmed and held that where "a transfer, and hence an instrument or transfer, is necessary to the consummation of a plan," the transfer is "under a plan" within the meaning of § 1146(c), regardless of whether or not the plan itself mentioned the instrument of transfer. *Jacoby–Bender,* 758 F.2d at 842; *accord Permar,* 79 B.R. at 533, *Smoss,* 54 B.R. at 951.

*Jacoby–Bender* is binding precedent; the City of New York's characterization of the Circuit's holding as erroneous is of no weight here. As in *Jacoby–Bender,* consummation of Amsterdam's plan " 'depended almost entirely upon the sale of the building,' the sale in turn depending upon the delivery of the deed." *Jacoby–Bender,* 758 F.2d at 841. That Amsterdam's plan "did not provide for, or even mention, the delivery of a deed," (City's Response at 10) is immaterial.

### B.

■ With respect to the Mortgage Taxes, this Court, per Judge Cornelius Blackshear, recently held, following the reasoning of *Jacoby–Bender,* that the New York State and City Mortgage Taxes imposed upon the recording of a convertible mortgage *obtained by a debtor* also constitute a "stamp tax or similar tax." *In the Matter of The Baldwin League of Independent Schools,* Case No. 88B–10401 (CB) (June 21, 1989) (oral opinion). There, as here, the City argued that the Mortgage Tax is imposed solely upon the exercise of the privilege of recording the mortgage and not upon the grant of the mortgage itself. In so ruling, Judge Blackshear, however, followed the Supreme Court's ruling in *Federal Land Bank of New Orleans v. Crosland,* 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703 (1923), that a mortgage recording tax was equivalent to a tax on the mortgage itself, and therefore fell within the federal statute exempting the federal government and its instrumentalities from local taxes.

Judge Blackshear further found that, like the deed tax analyzed in *Jacoby–Bender,* the Mortgage Tax is imposed upon a written instrument, and must be paid as a prerequisite to the document's recordation. *Jacoby–Bender,* 40 B.R. at 13.

The second prong of the section 1146(c) test, that the mortgage be an instrument of transfer employed to deliver an interest in property, was also held to have been satisfied in *Baldwin,* and is satisfied here. Under New York law, a mortgage is considered an interest in property, *WL Development Corp. v. Trifort Realty, Inc.,* 44 N.Y.2d 489, 498, 377 N.E.2d 969, 406 N.Y. S.2d 437, 442 (1978). The grant of a mortgage lien falls easily within the broad range of transfers defined by section 101(50) of the Bankruptcy Code, 11 U.S.C. § 101(50) (1986).[1] *See Jacoby–Bender,* 758 F.2d at 842.

Because the debtor in *Baldwin* itself was obtaining the mortgage on its only asset in order to consummate its plan of reorganization, the third prong of the section 1146(c) test was obviously satisfied.

Since *Baldwin* has been appealed, the City and State both argue here that under New York law a mortgage tax is *not* considered to be a tax on a transfer of an interest in property but a tax payable for the privilege of recording a mortgage, *see Citibank, N.A. v. N.Y.S. Tax Commission,* 98 A.D.2d 929, 470 N.Y.S.2d 920 (3d Dep't 1983); *S.S. Silberblatt, Inc. v. Tax Commission of the State of New York,* 5 N.Y.2d 635, 186 N.Y.S.2d 646, 159 N.E.2d 195 (1959), *cert. denied,* 361 U.S. 912, 80 S.Ct. 253, 4 L.Ed.2d 183 (1959); *Application of Downtown Athletic Club of N.Y. City, Inc.,* 280 A.D. 363, 113 N.Y.S.2d 485

---

**1.** Section 101(50), 11 U.S.C. § 101(50), provides: 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

Thus, the grant of mortgage is a transfer of an interest in property.

(3d Dep't 1952), *but see City of N.Y. v. Tully*, 88 A.D.2d 701, 451 N.Y.S.2d 265, 266 (3d Dep't 1982); *Hotel Waldorf Astoria Corp. v. State Tax Commission (In the Matter of Hotel–Waldorf Astoria Corp.)*, 86 A.D.2d 330, 451 N.Y.S.2d 261, 262 (3d Dep't 1982). We agree with Judge Blackshear, however. The City's and State's reliance upon State law determinations, in this context, is misplaced. Although the City argues that this Court is bound by the Rules of Decision Act, 28 U.S.C. § 1652 (1948 & Supp.1989), to follow the construction and character given to a state tax by state courts, that construction is not determinative of section 1146(c)'s definition of a tax imposed on the transferring of an interest in property. That issue is a federal question decided by defining the scope of federal law. *Cf. United States v. L.N. White & Co., Inc.*, 359 F.2d 703, 714 n. 16 (2nd Cir.1966) (citing *Priebe & Sons v. United States*, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947)). Furthermore, in determining the nature of a state tax which impacts upon a federal right, federal courts are not bound by, nor even permitted solely to look to labels affixed by the state; rather the federal court is free to look at the nature of the tax and its effect upon a federal right. *See Carpenter v. Shaw*, 280 U.S. 363, 367–68, 50 S.Ct. 121, 122–23, 74 L.Ed.2d 478 (1930), *accord United States v. Allegheny County*, 322 U.S. 174, 184, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

The City further argues that the *Crosland* decision and *Pittman v. Home Owners Loan Corp.*, 308 U.S. 21, 31, 60 S.Ct. 15, 17, 84 L.Ed. 11 (1939) (rejecting the argument that a mortgage recording tax is merely a tax on the privilege of recording), are distinguishable since they involved tax exemptions for federal instrumentalities. The City fails to realize, however, that the relevant question in applying the Supreme Court decisions to the case at hand is not whether the entity is entitled to the statutory exemption: it is whether the exemption, whose plain language applies to "instruments of transfer," also encompasses "recording" taxes. The Supreme Court's finding that the recording tax is a tax on the instrument is therefore highly instructive in defining the breadth of section 1146(c)'s tax exemption.

Like the State of Alabama in *Crosland*, the City and State employ the condition of recordation as a practical mode of collecting a general tax. In practice, mortgages must be recorded. Absent recording, a mortgage may not be released, discharged of record, or received in evidence in any action or proceeding, N.Y. Tax Law § 258 (McKinney 1988), financial institutions are legally required to promptly record any mortgage they accept, N.Y. Banking Law § 235(6)(a) (McKinney 1988) (savings banks), and it will not be effective against bona fide purchasers for value, *Cantrup*, 53 B.R. 104. Thus like a stamp tax, the mortgage recording tax is charged on a written instrument recognized in law in evidence of the enforcement of legal rights, *Jacoby–Bender*, 40 B.R. at 13.

### C.

▉ The City also argues that the section 1146(c) tax exemption violates the Tenth Amendment's implicit grant to the states of their sovereign taxing power. It is settled, however, that Congress can confer immunity from state taxation, *California State Bd. of Equalization v. Sierra Summit, Inc.*, — U.S. —, 109 S.Ct. 2228, 2234, 104 L.Ed.2d 910 (1989), and through its bankruptcy power, U.S. Const. art. I, § 8, cl. 4, may constitutionally exempt Chapter 11 debtors from state taxation under Section 1146(c). *CCA Partnership*, 70 B.R. at 698.

### D.

▉ The State and City further assert that the section 1146(c) exemption was never intended to benefit solvent debtors. The State argues that given that the predecessors to section 1146(c), section 267 of the Bankruptcy Act of 1898, 11 U.S.C. § 667 (repealed) and section 77B(f), 11 U.S.C. § 207 (repealed), were found in Chapter X of the former Act, which provided only for reorganizations of financially distressed corporations, it is likely that when Section 1146(c) was carried into the new Chapter 11 under the Bankruptcy Code, Congress gave

no thought to expanding the tax exemption to favor solvent debtors.

It is clear that the legislative history sheds no light on whether Congress sought to limit or expand the exemption. But it is equally clear that Congress intended, in the passage of Chapter 11, to extend bankruptcy relief to solvent debtors, such as those suffering cash flow difficulties, who file Chapter 11 petitions in good faith. Such debtors can and do file bankruptcy petitions and confirm Chapter 11 plans. The plain language of section 1146(c), in referring to all plans, makes no differentiation between solvent and insolvent debtors. Had Congress, in its near decade long substantial overhaul of the bankruptcy system, sought to limit the exemption to insolvent debtors, it surely would have found the words to express such an intent. *See United States v. Ron Pair Enterprises, Inc.,* — U.S. —, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (Construing section 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b)). Absent such, the plain meaning of the statutory language should be conclusive. *Ron Pair,* 109 S.Ct. at 1030.

### III.

▮ These conclusions drawn from extant authority bring us to the principal issue raised on this motion: Whether a tax on a mortgage granted by a non-debtor to a third party bank in consideration of a loan utilized to purchase estate property comes within the third prong of section 1146(c). More precisely, the question is whether such a mortgage is "an instrument of transfer under a plan."

Although a remedial statute such as the Bankruptcy Code is to be liberally construed, *CCA Partnership,* 70 B.R. at 698 (citing 3 Sutherland, *Statutory Construction,* §§ 60.01, 60.02, 66.09 (4th ed.1974), the Supreme Court has recently cautioned that "[a] court must proceed carefully when asked to recognize an exemption from state taxation that Congress has not

clearly expressed." *Sierra Summit,* 109 S.Ct. at 2234 (citing *Rockford Life Ins. Co. v. Illinois Dep't of Revenue,* 482 U.S. 182, 191, 107 S.Ct. 2312, 2317, 96 L.Ed.2d 152 (1987)). In *Sierra Summit,* the Court reversed the Ninth Circuit's ruling that a bankruptcy court's injunction against the assessment of a state sales tax upon the proceeds of a trustee's liquidation sale also barred the collection of a use tax upon the purchaser's lessees. The Court held that the intergovernmental tax immunity doctrine does not bar the imposition of non-discriminatory taxes on non-debtors who are parties to transactions with a bankruptcy trustee.

Like the *Sierra Summit* Court, we find "[n]othing in the plain language of the statute, its legislative history, or the structure of the Bankruptcy Code [to] indicate that Congress intended to exclude taxes" paid by a second party purchaser of estate property for recording a mortgage granted to a third party bank. *Sierra Summit,* 109 S.Ct. at 2235.

Section 1146(c) exempts transactions made pursuant to a confirmed bankruptcy plan. The *Jacoby–Bender* court, by referring to section 1123 of the Bankruptcy Code, 11 U.S.C. § 1123 (1986), found that sales of debtor property to entities wholly unrelated to the debtor, like the sale from Amsterdam to West Side, are properly considered transactions made "under a plan." *Jacoby–Bender,* 758 F.2d at 842. From section 1123(a)(5)(B), and its provision that a plan may call for the sale of some or all of the assets of an estate for its implementation, the Second Circuit found explicit Congressional intent to include such sales within the meaning of "transfer" as that word is utilized in section 1146(c).[2] *Jacoby–Bender,* 758 F.2d at 842. There, however, the tax being construed was levied upon a written instrument transferring an interest in property from the debtor as seller to a purchaser. Similarly, the transaction analyzed by the *Baldwin* court involved only a mortgage given by a debtor.

**2.** Section 1123(a)(5)(B), 11 U.S.C. § 1123(a)(5)(B), provides that a plan shall provide such adequate means for the plan's implementation as "transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;".

Every other decision granting exempt status to instruments transferring an interest in property involved a transaction between a debtor and a second party, *see CCA Partnership*, 70 B.R. at 696–97; *Permar*, 79 B.R. at 532; *Cantrup*, 53 B.R. at 105; *Smoss*, 54 B.R. at 951, as opposed to a transfer between two non-debtors, and have therefore been readily classified as coming "under a plan."

From the precept that one section of an integrated statute is to be construed in light of other sections, *Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, *reh'g denied*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975), it appears that a grant of a mortgage lien by a non-debtor to a bank in consideration of a loan is not a transfer *under* a Chapter 11 plan. In Section 1123 of the Bankruptcy Code, Congress listed the subjects that it expected could be embraced by a Chapter 11 plan. That list is not conclusive, is extremely broad, and indicates few limitations.[3] But significantly missing from that list is any indication that Congress intended that a transfer between non-debtors be the subject of a plan. While courts can issue, pursuant to section 105(a) of the Code, 11 U.S.C. § 105(a) (1986), injunctions and other orders affecting parties in interest to a bankruptcy case and other entities, in order to implement reorganization plans, *see e.g., In the Matter of Johns–Manville Corp.*, 68 B.R. 618, 625, 15 Bankr.Ct.Dec. (CCR) 480, Bankr.L. Rep. (CCH) ¶ 71531, 16 Collier Bankr. Cas.2d (MB) 98 (Bankr.S.D.N.Y.1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987), that ability offers no guidance as to Congressional intent as to the scope of section 1146(c)'s requirement that the transfer be "under a plan." Section 1123, where Congress indicated its intentions as to the contents of Chapter 11 plans, evidences that Congress did not intend that section 1146(c) exemptions for transfers under a Chapter 11 plan apply to non-debtor transactions.

To this evidence of congressional intent is to be added a jurisdictional concern. The notion of a "transfer under a plan" connotes a transfer over which the bankruptcy courts have jurisdiction. This Circuit, following *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986), holds, however, that the bankruptcy courts lack jurisdiction to determine the tax liability of a non-debtor under section 505 of the Bankruptcy Code., 11 U.S.C. § 505 (1986). *Brandt–Airflex Corp. v. Long Island Trust Co., N.A. (In re Brandt–Airflex Corp.)*, 843 F.2d 90 (2nd Cir.1988). Accordingly, this Court has held that the bankruptcy courts lack subject matter jurisdiction over a proceeding seeking to determine the validity of tax liens on property of non-debtors even though that property is to be contributed to a debtor in order to fund its plan. *Holland Industries, Inc. v. United States of America (In re Holland Industries, Inc.)*, 103 B.R. 461, 470, (Bankr. S.D.N.Y.1989). While jurisdiction may lie as a related proceeding if the matter involves property in which a debtor has a legally cognizable interest, *Holland* at 469, the Debtor here, notwithstanding its cognizable interest in receiving the purchase price, enjoys no such interest in the mortgage given by West Side to the Bank.

This concern and Congress' having given no evidence of having contemplated a plan to embrace a non-debtor transaction strongly indicate that section 1146(c) is not to be construed to exempt taxes on instruments of transfer to which a debtor is not a party.

To this the Debtor argues that the Court's proper focus lies not on the parties to the tax but upon the instrument itself. That argument is misplaced. Several cases reason that once an instrument is exempt, it remains so throughout the transaction regardless of whether it is the debtor or

---

**3.** Section 1123(b), 11 U.S.C. § 1123(b), provides, *inter alia,* that a plan may provide for: "the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests",

11 U.S.C. § 1123(b)(4), as well as include "any other appropriate provision not inconsistent with the applicable provisions of this title," 11 U.S.C. § 1123(b)(5).

the non-debtor upon whom the tax is levied and they thus extend the section 1146(c) exemption to non-debtor grantees required to pay transfer taxes. *See e.g. CCA Partnership,* 70 B.R. at 698; *Cantrup,* 53 B.R. at 106. In order for West Side's obligation to fall within the exemption, however, it must first appear that the mortgage given by West Side to the Bank was initially an instrument of transfer under a plan. That is the issue here, not the answer.

The Debtor also maintains that since the mortgage obtained by the purchaser of its property was necessary to fund the purchase price, which could have been higher but for the Mortgage Taxes imposed, the obtaining of the mortgage should be classified as lying "under a confirmed plan." It points out that the Mortgage Taxes will amount to the not insignificant amount of $84,375 and adds that its plan provides that one-half of that amount is to be paid to the Debtor should the section 1146(c) exemption apply.

As Judge Augustus Hand commented in dismissing a similar argument: "What the trustee is really complaining of is ... his inability to sell to a purchaser who would be exempt from a tax and because of such exemption would pay a higher price to him than would ordinarily be paid for the goods sold. It seems unreasonable to treat the absence of an exemption as a burden upon the normal exercise of a governmental function." *In re Leavy,* 85 F.2d 25, 27 (2nd Cir.1936), quoted in *Sierra Summit,* 109 S.Ct. at 2233, n. 4. Thus, however reasonable is the desire to increase assets for distribution to creditors, a failure to exempt state taxes does not burden the bankruptcy power vested in Congress. Simply put, a debtor and its creditors, like everyone else, are subject to state and local taxation unless Congress has clearly provided an exemption.

In sum, we conclude, guided by the Supreme Court's mandate in *Sierra Summit* requiring careful examination of claims for exemption from state taxation not clearly expressed by Congress, *Sierra Summit* at 2235, there is no evidence that Congress intended, or that section 1146(c) is to be construed, to provide an exemption from state and local mortgage taxes on a mortgage given by a purchaser to a bank in order to fund a purchase of estate property from a Chapter 11 debtor. Absent any indication by Congress that it so intended, and in light of the indicia drawn from section 1123 and the jurisdiction cases noted above, such a mortgage, although necessary to fund a purchase price payable to the Debtor, and hence a plan, simply cannot be construed to be an instrument of transfer under a confirmed plan.

For the foregoing reasons, the motion must be and is hereby granted to the extent of the Deed Taxes and is otherwise denied. The Debtor shall settle an order consistent with this decision.