In the Case of EASTMET
CORPORATION, Debtor.

Suzanne MENSH, Clerk of the Circuit
Court for Baltimore County,
Plaintiff–Appellant,

v.

EASTERN STAINLESS CORPORA-
TION, Defendant–Appellee.

No. 89–2489.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1990.

Decided July 16, 1990.

As Amended Aug. 16, 1990.

Julia Melville Freit, Asst. Atty. Gen., Baltimore, Md., argued (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Md., on brief), for plaintiff-appellant.

Lawrence David Coppel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., argued (Antoinette C. Emery, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., on brief), for defendant-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and SMITH, Senior Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

MURNAGHAN, Circuit Judge:

Here is a case that illustrates the necessity to cut square corners in dealing with a statute providing a tax exemption. Eastmet Corporation, a bankrupt, proceeding under a confirmed Chapter 11 reorganization plan, sold to Eastern Stainless Corporation ("ESC") several assets, including real property located in Baltimore County, Maryland. To finance the purchase, ESC borrowed $15,000,000 from Pittsburgh National Bank and BT Commercial Corporation. A purchase money deed of trust on the real property was executed to secure the loan.

Upon submission of the deed of trust for recording, a recordation tax of $75,000 (0.5% of the amount secured by the deed of trust) was assessed by the Clerk of the Circuit Court for Baltimore County, Suzanne Mensh. Having paid the tax under protest, ESC sought a refund, claiming before the Bankruptcy Court for the District of Maryland that 11 U.S.C. § 1146(c) operated to exempt the purchase money deed of trust from the recordation tax. Bankruptcy Judge James F. Schneider determined that the deed of trust was exempt from recordation tax, and Judge John R. Hargrove of the United States District Court for the District of Maryland affirmed. 109 B.R. 694.

Two questions have emerged in Mensh's appeal from the district court's judgment. First, did § 1146(c) apply? That section provides:

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c). Second, was the purchase money deed of trust exempt from recordation tax under Maryland law? Section 12–108(i) of the Maryland Tax–Property Code provided, at the time of the transfer here involved, that "[a] purchase money mortgage or a purchase money deed of trust is not subject to recordation tax."[1] Md. Tax–Property Code Ann. § 12–108(i) (1986).

■ Turning first to the federal question, there can be no doubt that the deed of trust transaction involved the making or delivery of an instrument of transfer. *See* 11 U.S.C. § 101(50) ("transfer" includes retention of title as security interest); *In re Amsterdam Ave. Dev. Assocs.*, 103 B.R. 454, 457 (Bankr.S.D.N.Y.1989) ("transfer" includes grant of a mortgage lien). However, to come within the terms of § 1146(c), the instrument of transfer must be "under a plan confirmed under section 1129 of this title." The plan here did not require that financing of the transaction be accomplished through a purchase money deed of trust. The lenders were not parties to the plan, nor was the debtor a party to the deed of trust transaction. Indeed, it remains questionable whether the bankruptcy court could have required, "under the

plan," that the purchasers execute the deed of trust to the third-party lenders. *See* 11 U.S.C. § 1123 (statutory list of what plan "shall" and "may" include does not include a transaction between purchaser and third-party lender); *Amsterdam Ave. Dev. Assocs.*, 103 B.R. at 460 (attributing significance to § 1123's lack of mention of nondebtor transfers).

While the plan itself stated that there should be no recordation tax "in connection with the sale and transfer of the real and personal property of the Debtors," that statement reaches only the deed transferring the property out of the debtor, not an instrument securing the purchaser's indebtedness to third parties, here Pittsburgh National Bank and BT Commercial Corporation. While the purchase money deed of trust was described, by the bankruptcy judge, "as part of the same transaction" by which ESC acquired the debtor's real property, that does not elevate the deed of trust to the status of something "under a plan confirmed under section 1129." A simultaneous third-party transaction in which the cash satisfying the sale would be obtained through a recorded purchase money deed of trust was not something required by the bankruptcy court. Its confirmation or approval was, hence, not requisite. The emanation of 100% of the purchase price from the purchasers' bank accounts or from unsecured loans would have been entirely acceptable under the plan.[2]

---

1. Subsequent to the transaction, § 12–108(i) was amended, effective July 1, 1989, to include the following definition:

   In this subsection, "purchase money mortgage" or "purchase money deed of trust" means a mortgage or deed of trust that ... is delivered as part of the same transaction as the instrument of writing that transfers the property purchased *and that is subject to the recordation tax;....*

   1989 Md.Laws, ch. 586 (emphasis added).

2. Arriving at the point to which analysis by analogy has brought us, let us go even further than the case presented in the transaction before us. Imagine that the plan, in addition to acknowledging that the deed and the deed of trust were part of the same transaction, had stipulated that a purchase money deed of trust had to be employed to finance the transaction. Giving attention to the forthcoming purchase money deed of trust, standing alone, neverthe-

less, would not give rise to the recordation tax. The Pittsburgh National Bank and BT Corporation would still be free to record the purchase money deed of trust, or not, as they preferred. It would be no business of the bankruptcy process, or the plan under it, whether there was a resort by third parties to recordation. It is admittedly true that the added protection given by recordation would normally be availed of, but that question, as to third parties, is simply not one bankruptcy should be concerned about. There was a time before the state provided the convenience of recording that mortgages were executed and delivered and sums of money passed hands on the strength of them alone as security. So it was the separate and distinct voluntary decision of the third parties to record the purchase money deed of trust, not the issuance thereof, which gave rise to the tax.

Consequently, remembering that a tax exemption is to be construed strictly against the taxpayer, *California State Bd. of Equalization v. Sierra Summit,* — U.S. —, —, 109 S.Ct. 2228, 2234, 104 L.Ed.2d 910 (1989), we hold that ESC's purchase money deed of trust did not qualify for the exemption under § 1146(c). While there are countervailing principles of liberal construction especially pertinent to bankruptcy, the plain language of the statute applies to deny the purchase money deed of trust recordation tax exemption since it was not "under a plan confirmed under section 1129."

One may question the reasonableness of the result, on the theory that the bankrupt estate may suffer, in effect, a reduction in price to the extent of the recordation tax. But Congress has enacted a statute and may be supposed to have had its reasons. It is true that, if the transfer had been accomplished by a cash payment in full, so that there would have been no deed of trust, the tax exemption would still apply *to the deed,* which could only come into existence and be recorded if such a transfer was called for "under a plan." However, that highlights the very point why the tax on the purchase money deed of trust was proper. In the case of a fully cash transaction, there would have been no occasion for a deed of trust, and hence nothing in the way of recordation to tax. As things have developed, however, there was a recorded deed of trust, and, the contemporaneous deed being exempt, recordation of the deed of trust triggered the tax.[3]

ESC could observe that the debtor selling the property could have lent part of the purchase price to the purchaser and itself taken a purchase money deed of trust as security, promptly selling the deed of trust to the third-party lenders. We would be faced with a document exempt from recordation tax because structuring the transaction in a manner by which the deed of trust runs to the debtor could only be brought about "under a plan confirmed under section 1129".[4] But that course of conduct would by no means be equivalent to the transaction we here consider. On such an approach, the third-party lenders would forfeit the benefits of recordation, title protection against the world. If they should seek to record evidence of the transfer of the deed of trust to them, the transaction would be, like the one under consideration, taxable. The purchase money deed of trust was simply not under a plan confirmed and, therefore, failed to meet the requirements of § 1146(c).

A similar holding was recently announced by the Bankruptcy Court for the Southern District of New York. *In re Amsterdam Ave. Dev. Assocs.,* 103 B.R. 454 (Bankr.S.D.N.Y.1989). Speaking of § 1146(c), the bankruptcy court said, "we find 'nothing in the plain language of the statute, its legislative history, or the structure of the Bankruptcy Code to indicate that Congress intended to exclude taxes' paid by a second-party purchaser of estate property for recording a mortgage granted to a third party bank.... Section 1123, where Congress indicated its intentions as to the contents of Chapter 11 plans, evidences that Congress did not intend that section 1146(c) exemptions for transfers under a Chapter 11 plan apply to non-debtor transactions." *Id.* at 459, 460.

■■■ There remains the alternate contention that Maryland law would itself exempt the purchase money deed of trust from recordation tax.[5] At first glance it would seem to do so, speaking in rather unequivocal language, that "[a] purchase money mortgage or a purchase money deed of trust is not subject to recordation tax." However, it has for some time been recognized as the law of the State of Maryland

---

3. In a quite analogous case, a mortgage taken and recorded a month after the deed was exchanged to refinance an unsecured promissory note by which the purchase price had been raised would not be exempt from recordation tax.

4. It would remain to be considered whether the debtor could have or should have entered into such a transaction, but, in all events, the point remains that is not the way things took place.

5. The district court never reached the issue in view of its holding on the basis of a contrary interpretation of § 1146(c).

that purchase money mortgages and purchase money deeds of trust, whatever meaning is to be afforded those terms in other circumstances, are

> exempt from the tax because of the fact that they are executed and recorded simultaneously with a deed conveying the property to the mortgagor [in circumstances in which a] tax on the full price paid for the property is paid upon the recording of the deed....

24 Op. Md. Att'y Gen. 981, 982 (1939). The rationale behind the Maryland exemption from recordation tax is simply to avoid double taxation of both the deed and the purchase money deed of trust. Thus, according to the Attorney General of Maryland, the term "purchase money mortgage," as used in the state recordation tax exemption, means "only purchase money mortgages offered for recording in conjunction with a deed or bill of sale upon which the recording tax has already been paid." 47 Op. Md. Att'y Gen. 196, 199 (1962); *see also* 50 Op. Md. Att'y Gen. 428, 429 (1965); 31 Op. Md. Att'y Gen. 239, 241 (1946).

Here the statutory bite was larger than the Maryland legislature meant to chew. The *deed* in the present case was exempt from tax under 11 U.S.C. § 1146(c). Under § 12–108(i) of the Maryland Tax–Property Code, the term "purchase money deed of trust" is not intended to include a transaction bearing that name but presented for recordation in circumstances where recordation of the deed involved in the transaction does not lead to a recordation tax.

It might, in other circumstances, be incumbent upon us to refer the question of taxability *vel non* to the Maryland Court of Appeals since the opinions of the Attorney General of Maryland, while entitled to respect, may not dispose of the matter. However, the 1989 amendment to § 12–108(i) made crystal clear that a purchase money deed of trust is exempt from recordation tax only if the deed itself is subject to the recordation tax. 1989 Md. Laws, ch. 586 (amending Md. Tax–Property Code Ann. § 12–108(i)). Clarification of what has always been the law is a possible explanation. Since, therefore, a ruling by us has, temporally, only a limited effect and the interpretation of the Maryland Attorney General has been in effect for many years without the legislature of the State having chosen to contradict it, it is appropriate for us to conclude that an exemption for the transaction here under consideration cannot be found in Maryland law. *Cf. Bob Jones Univ. v. United States,* 461 U.S. 574, 599–602, 103 S.Ct. 2017, 2032–2034, 76 L.Ed.2d 157 (1983).

The case is, accordingly, reversed, with directions to enter judgment denying the claimed refund.

REVERSED, WITH DIRECTIONS.