In re T.H. ORLANDO, LTD. and T.H. Resorts Associates, Ltd., Debtors.

T.H. Orlando, Ltd., T.H. Resorts Associates, Ltd., and Kissimmee Lodge, Ltd., Osceola, Plaintiffs,

v.

State of Florida, Department of Revenue, Defendant.

Bankruptcy Nos. 97–01680–6B1, 97–01681–6B1.

Adversary No. 01–188.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

April 13, 2003.

John K. Olson, Tampa, FL, for Debtor.

## *ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on cross motions for Summary Judgement by Plaintiffs, T.H. Orlando, LTD., ("T.H. Orlando") T.H. Resorts, LTD., ("T.H. Resorts") (collectively, "Debtors") and Kissimmee Lodge, LTD. ("Kissimmee Lodge") (Doc. 7) and Defendant State of Florida, Department of Revenue ("DOR") (Doc. 6).

### *Findings of Facts*

T.H. Orlando and T.H. Resorts each filed for chapter 11 bankruptcy February 28, 1997, to prevent foreclosure of a mort-

gage encumbering T.H. Orlando's hotel located near the Florida mall ("Florida Mall") and two hotels owned by T.H. Resorts located near Walt Disney World and Lakeside ("Disney East" and "Lakeside"). The cases were procedurally consolidated March 7, 1997 (Doc. 15). The mortgage debt on the three properties exceeded $70 million. RECP Orlando, L.P., ("RECP") the mortgagee, agreed to accept $23.5 million in satisfaction of the outstanding mortgage balance. RECP conditioned the offer on receipt of $23.5 million by August 31, 1997.

T.H. Orlando and T.H. Resorts met with twenty mortgage lenders, and formally applied for two loans. They were unable to receive sufficient amounts to satisfy the $23.5 million RECP release price. Since the loans were essential to the plan and to make a financing package more attractive, T.H. Orlando and T.H. Resorts requested Kissimmee Lodge, an insider of both, to refinance its hotel as an accommodation. Kissimmee agreed and the Debtors applied for loans from Berkshire Mortgage Financial Corp. ("Berkshire").

Berkshire issued four separate commitment letters on July 31, 1997. Berkshire agreed to loan T.H. Orlando $4 million on the Florida Mall property and T.H. Resorts $9.9 million on the Disney East property and the $12.8 million on the Lakeside property. Berkshire also provided $29.35 million for the refinancing of Kissimmee Lodge's mortgage. Berkshire's agreement to loan money to T.H. Orlando and T.H. Resorts was conditioned on Kissimmee Lodge's agreement to refinance its property simultaneously. Kissimmee's agreement to refinance was necessary to implement the plan.

Debtors filed a joint plan of reorganization, which, pursuant to the plan, paid RECP $23.5 million and remaining creditors one-hundred percent of their allowed claims, based on Berkshire's commitment letters. The plan, concerning Kissimmee Lodge's refinancing, stated,

> The funds necessary to pay RECP $23.5 million shall come from a refinance loan to [Debtors] in the amount of $26.7 million to be provided by [Berkshire], and from new equity of $3 million Cash to be provided by Orlando Resorts Investors, Inc. by September 2, 1997...The excess of the funds provided by Berkshire and by Orlando Investors, Inc. over the $23.5 million to be paid RECP shall be used by [Debtors] to make certain necessary repairs and upgrades to the [h]otels. In addition to the $26.7 million to be provided to [Debtors], Berkshire has also committed to loan [Kissimmee Lodge] $29,350,000 to be secured by a first mortgage encumbering [Kissimmee Lodge's hotel]. Berkshire's willingness to make the loan to [Debtors] is contingent upon Kissimmee Lodge's agreement to refinance its hotel through Berkshire; Berkshire will not provide any financing to [Debtors] unless Kissimmee Lodge refinances through Berkshire. The Kissimmee Lodge refinancing therefore is incident and a condition precedent to the reorganization of [Debtors] and that refinancing therefore is exempt from Florida documentary stamp taxes, intangible taxes and similar taxes pursuant to 11 U.S.C. § 1146(c).[1]

The plan further provided,

> 6. Taxes. Pursuant to Section 1146(c) of the Code, the issuance, transfer or exchange of securities pursuant to this Plan, or the making or delivery of an instrument of transfer, including the modification of any Lien on any property pursuant to this Plan or pursuant to a

---

1. Adv. 01–188, Doc 1, Ex. G.

Final Order of the Court (including those on property owned by Kissimmee Lodge, LTD. and refinanced as set forth in this Plan) shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax.[2]

DOR filed an Objection to Confirmation arguing the exemptions afforded pursuant to 11 U.S.C. § 1146(c) were not available to Kissimmee Lodge, as a non-debtor entity. A confirmation hearing was held August 18, 1997. Berkshire refused to fund the loans until a final Order was entered. Since RECP's agreement to accept $23.5 million in full satisfaction of its $70 million mortgage balance expired August 31, 1997, timing issues became critical. Debtors, with the affirmative consent of the DOR, agreed to the Order sustaining the DOR's objection without prejudice to the Debtor's and Kissimmee Lodge's right to bring suit subsequently.

An Order Approving the Debtor's Disclosure Statement, as Amended and Confirming the Joint Plan of Reorganization, as Amended, was entered August 18, 1997. The Confirmation Order stated,

> 3. The Plan, including the [Plan Amendments], is hereby confirmed, and all objections thereto are overruled, except that the objection raised by the [DOR] is sustained without prejudice, and the Plan is hereby amended such that the $29,350,000 mortgage refinancing transaction between Kissimmee Lodge and Berkshire shall not, until further order of the Court, be deemed exempt from Florida documentary stamp taxes under 11 U.S.C. § 1146(c).[3]

All of the refinancing transactions with Berkshire closed on August 29, 1997.

Berkshire recorded its mortgages September 2, 1997. DOR agreed Florida documentary stamp taxes and intangible taxes were not payable on Berkshire's mortgages encumbering the hotels of T.H. Orlando and T.H. Resorts. DOR maintained such taxes were payable on Kissimmee Lodge's mortgage. Kissimmee Lodge paid DOR $102,725 as documentary stamp taxes and $58,700 as intangible taxes under protest. Debtors and Kissimmee Lodge filed a complaint against DOR in the Circuit Court of Osceola County, Florida.[4] DOR requested removal to this court pursuant to F.R.B.P. Rule 9027. (Doc. 1). Removal was granted based upon the retention of jurisdiction in the Order of Confirmation.[5]

### Conclusions of Law

The scope of 11 U.S.C. § 1146(c)'s stamp tax exemption provision and whether those exemptions encompass Kissimmee Lodge's accommodation refinancing is at issue. 11 U.S.C. § 1146(c) states,

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument or transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax.[6]

The DOR cites Chapter 12B–4.054(31) of the Florida Administrative Code, which interprets 11 U.S.C. § 1146(c) stating,

> (31) Confirmed Bankruptcy Plan: Under 11 U.S.C. § 1146(c), the issuance, transfer, or exchange of a promissory

---

2. *See Id.*

3. *In re T.H. Orlando, LTD.,* Case No. 97–0168–6B1, Doc. 120.

4. *Kissimmee Lodge, LTD., Plaintiff v. State of Florida, Department of Revenue, Defendant,* CI–0100936.

5. *In re T.H. Orlando, LTD.,* Case No. 97–0168–6B1, Doc. 120.

6. 11 U.S.C. § 1146(c).

note, bond or written obligation for payment of money, or the making, delivery or recordation of a mortgage, trust deed, security agreement or other evidence of indebtedness, is exempt from the documentary stamp tax if it is done pursuant to a plan confirmed by the federal bankruptcy court under 11 U.S.C. § 1129, is a precondition or essential to the confirmation of a plan, or is necessary to consummate or implement a confirmed plan and the Debtor is a party to the transaction. If the Bankruptcy Court does not ultimately confirm the plan under 11 U.S.C. § 1129, the transfer would not be exempt... [7]

The Florida Administrative Code creates a trifurcated system for application of section 1146(c). An exemption occurs if it 1) ...is done pursuant to a plan confirmed by the federal bankruptcy court under 11 U.S.C. § 1129..., 2) ...is a precondition or essential to the confirmation of the plan...3)...is necessary to consummate or implement a confirmed plan and the debtor is a party to the transaction. Even if this discrete trifurcated system is in actuality a series of interlocked preconditions Kissimmee Lodge would still meet that standard.

■ Courts which have reviewed the strictures of 11 U.S.C. § 1146(c) have found the claimed exemption must be strictly construed against a claimant. *See California State Bd. of Equalization v. Sierra Summit,* 490 U.S. 844, 109 S.Ct.

2228, 2234, 104 L.Ed.2d 910 (1989). In order to prevail the claimant must show the consummation of the plan depended on the transaction, *See In re Jacoby–Bender, Inc.,* 758 F.2d 840, 841 (2d Cir.1985), was made pursuant to a confirmed bankruptcy plan, *See In re Amsterdam Avenue Development Associates,* 103 B.R. 454 (Bankr. S.D.N.Y.1989),[8] and the transaction was an essential component of the plan confirmation. *See In re Hechinger Investment Company of Delaware, Inc.,* 276 B.R. 43 (D.Del.2002).[9] Kissimmee Lodge's accommodation refinancing meets all the above conditions.

Kissimmee Lodge's agreement to refinance was done "pursuant to the plan", "was essential to the confirmation of the plan",[10] and since Berkshire would not complete the financing arrangement with T.H. Orlando and T.H. Resorts without Kissimmee Lodge's agreement, the refinancing was "necessary to consummate" and "implement" the plan.[11] Kissimmee Lodge's refinancing of its mortgage by Berkshire is a transfer pursuant to 11 U.S.C. § 1146(c) and is exempt from stamp or similar taxes.[12]

### Order

It is **ORDERED, ADJUDGED and DECREED** that Plaintiffs', T.H. Orlando, Ltd., T.H. Resorts Associates, Ltd. and Kissimmee Lodge, Ltd., Motion for Summary Judgment is **GRANTED**; and it is further

---

7. Fla. Admin. Code. Chapter 12B–4.054(31) (2001).

8. *See also In re Cantrup,* 53 B.R. 104 (Bankr. D.Colo.1985);

9. *See also In re CCA Partnership,* 72 B.R. 765 (D.Del.1987)(stating, "[s]ection 1146(c) of title 11 broadens the exemption to any stamp tax or similar tax on a security or a transfer instrument dealt with under the consolidated chapter 11.").

10. *See In re Hechinger Inv. Co. of Delaware, Inc.,* 254 B.R. 306 (Bankr.D.Del.2000).

11. *See In re 310 Associates, L.P.,* 282 B.R. 295 (S.D.N.Y.2002).

12. *See In re Baldwin League of Independent Schools,* 110 B.R. 125 (S.D.N.Y.1990)(stating, mortgage with option to buy was an instrument of transfer for purposes of [section 1146(c) ] exemption).

ORDERED, ADJUDGED and DE-CREED that Defendant's, the Florida Department of Revenue, Motion for Summary Judgment is **DENIED**; it is further

ORDERED, ADJUDGED and DE-CREED that Kissimmee Lodge, Ltd.'s refinancing of its mortgage with Berkshire Mortgage Financial Corp. is entitled to an exemption from documentary stamp taxes and intangible taxes pursuant to 11 U.S.C. § 1146(c); it is further

ORDERED, ADJUDGED and DE-CREED that **JUDGMENT** is entered in favor of Plaintiffs T.H. Orlando, Ltd., T.H. Resorts Associates Ltd. and Kissimmee Lodge, Ltd. and against Defendant the Florida Department of Revenue; and it is further

ORDERED, ADJUDGED and DE-CREED that **JUDGMENT** is awarded in favor of Kissimmee Lodge, Ltd. and against Defendant the Florida Department of Revenue in the amount of $161,425.