**In re E. Thomas WILLIAMS, Jr., Debtor.**

**Bankruptcy No. 893–80004–478.**

United States Bankruptcy Court,
E.D. New York.

Oct. 28, 1994.

---

Weinberg, Kaley, Gross & Pergament, P.C. by Marc A. Pergament, Garden City, NY, for debtor.

G. Oliver Koppel, Atty. Gen. for State of N.Y. by David S. Cook and Marcie S. Mintz, New York City, for New York State Dept. of Taxation and Finance.

***DECISION ON MOTION TO EXPUNGE OR REDUCE NEW YORK STATE REAL PROPERTY GAINS TAX AS NOT ENTITLED TO PRIORITY STATUS PURSUANT TO 11 U.S.C. SECTION 507(a)(7)***

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion by E. Thomas Williams, Jr. (the "Debtor") to expunge and/or reduce the claim of the New York State Department of Taxation and Finance (the "Department of

Taxation") for, *inter alia,* amounts owed under the New York State Real Property Gains Tax (Article 31–B, Tax Law § 1440 *et seq.*) (the "Gains Tax"). The Debtor objected to the portion of the proof of claim relating to the Gains Tax on several grounds. In supplemental briefs and at oral argument, the Debtor raised the threshold issue of whether the Gains Tax is to be properly classified as a priority tax pursuant to 11 U.S.C. Section 507(a)(7)(A), or whether the amount due should be treated as a general unsecured claim. This is a case of first impression as to the narrow issue of whether the Gains Tax is a tax "on or measured by income or gross receipts" and therefore is to be accorded priority status under Section 507(a)(7)(A) of the Bankruptcy Code (the "Code"). Based on an exhaustive study of legislative history, sparse case law and policy considerations relating to § 507 of the Code, the Court finds that the Gains Tax is a tax "on or measured by income". Therefore, priority status pursuant to Section 507(a)(7)(A) of the Code is applicable to this claim. A hearing will be scheduled for further argument as to whether the timing of the assessment is within the statutory limitation pursuant to 11 U.S.C. Section 507(a)(7)(A)(i), (ii) or (iii).

## FACTS

In October 1982, the Debtor purchased shares to approximately 690 apartments in the cooperative known as Fordham Hill. The Debtor then commenced the sale of these cooperative apartment units which continued until July 1991. In accordance with the Gains Tax, real property owners who sell real property in excess of $1,000,000.00 consideration are liable for a tax equal to ten percent of the gain. The gain is calculated by subtracting the original purchase price from the actual selling price of the property being transferred.

According to the Department of Taxation's proof of claim, the Gains Tax in the amount of $1,101,247.00 became due on May 12, 1983. On October 18, 1989, the Department of Taxation issued a Statement of Proposed Audit Adjustment to the Debtor relating to the sale of the Fordham Hill apartments. On or about October 30, 1989, the Debtor responded to the estimated Statement of Proposed Audit Adjustment, which commenced the assessment process. After obtaining additional information from the Debtor, a Statement of Proposed Audit Adjustment was prepared based on actual audit results by the Department of Taxation on November 14, 1990. Subsequently, on January 25, 1991, the Department of Taxation issued a Notice of Determination which assessed the Debtor's tax arrears. The Notice of Determination further provided that the assessment would be deemed final on April 25, 1991 if no response was filed.

The Debtor conceded that the Gains Tax was due and owing to the Department of Taxation. As a result, the Debtor did not file a Petition For a Tax Appeals Hearing. However, the Debtor did question the method employed to determine the amount of the tax and penalty assessed, and thus filed a Request For a Conciliation Hearing on April 24, 1991, to determine the proper method for calculating the Gains Tax due. On March 11, 1992, a Conciliation Conference was held between the Debtor and the Department of Taxation and a Conciliation Order was issued sustaining the assessment on July 10, 1992. The Debtor filed a petition for Chapter 11 relief on September 8, 1992.

## DISCUSSION

■ The Debtor raises several arguments to support his position that the Gains Tax is not a tax "on or measured by income or gross receipts" entitled to priority status under § 507(a)(7) of the Code.[1] Upon a curso-

---

1. Section 507 of the Bankruptcy Code states, in pertinent part:

 (a) the following expenses and claims have priority in the following order . . .

 (7) Seventh, allowed unsecured claims of governmental units only to the extent that such claims are for—

 (A) a tax on or measured by income or gross receipts . . .

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was

ry review of the issue, it appeared that the Debtor had a good argument. According to the Debtor, the Gains Tax should not be classified as a tax on income because of certain characteristics this tax possesses. Any payments of this tax cannot be deducted on federal income tax returns and the tax does not permit the offset of gains by losses. It is conceivable that a party might be subject to the Gains Tax and still have a loss allowable on his or her state and federal income tax returns. Furthermore, the Debtor argues that certain opinion letters issued by the Department of Taxation in 1983 are persuasive in their conclusion that the Gains Tax is more akin to a transfer tax.

 The Debtor directs the Court to examine the opinion letters issued in 1983 by the New York State Department of Taxation. While the letters may not be binding on the parties to this action, or this Court, it is sufficient that the arguments made by the Department of Taxation in the letters are persuasive and are appropriate for consideration. Since the Gains Tax has yet to be clearly classified by the drafters of the legislation, it is appropriate to examine all sources in an effort to determine whether or not the tax should be deemed a tax "on or measured by income." In the opinion letters, the Department of Taxation opines that the Gains Tax is not an "income tax" because it does not allow the taxpayer to offset losses against gains. In the opinion letter dated September 21, 1983, the Department of Taxation wrote:

> The State gains tax is a transfer tax rather than a property or income tax since the triggering mechanism of the tax is the transfer of real property. Whereas the gains tax is a tax on the transfer of real property, a property tax is a levy on the property itself. Income taxes are generally applied to net gain. Under the gains tax, the loss from one transfer of real property does not effect the applicability of the gains tax to another transfer of real property in the same tax year. For these reasons, it is our opinion that the State

gains tax should be classified as a State transfer tax and should be treated as such for purposes of deductibility.

In discussing an Internal Revenue Service ruling on a similar tax in Vermont in a letter dated November 14, 1983, the Department of Taxation provided an analysis which was identical to that contained in the September 21, 1983, opinion letter.

In response, the Department of Taxation relies in large part on *In re Jacoby–Bender, Inc.,* 40 B.R. 10, 15 (Bankr.E.D.N.Y.1984), *aff'd,* 758 F.2d 840 (2d Cir.1985), where the issue before the Bankruptcy Court was whether the Gains Tax is a stamp tax for purposes of 11 U.S.C. § 1146(c) of the Bankruptcy Code. In coming to the conclusion that the Gains Tax was not a stamp tax, the Bankruptcy Court did suggest that the Gains Tax is in the nature of an income tax. However, the issue presented to the Bankruptcy Court in *Jacoby–Bender* was whether the Gains Tax is a "stamp tax or similar tax" under Section 1146(c) of the Code, not whether the Gains Tax fell within the priority scheme of Section 507(a)(7) of the Code. The identical issue that was raised in the *Jacoby–Bender* case was eventually decided by the Second Circuit in *In re 995 Fifth Avenue Associates, L.P. v. New York State Department,* 116 B.R. 384, 388 (Bankr.S.D.N.Y. 1990), *aff'd,* 127 B.R. 533 (S.D.N.Y.1991), *aff'd in part, rev'd in part on other grounds,* 963 F.2d 503 (2nd Cir.1992). The Court of Appeals for the Second Circuit clearly held that the Gains Tax was not a transfer tax for the purpose of granting the Debtor an exemption pursuant to Section 1146(c) of the Code.

The issue before this Court, which is entirely different from the two prior cases, is solely whether the Gains Tax is a tax "on or measured by income" for purposes of granting priority status to a claim based on Section 507(a)(7)(A) of the Code.

The proper analysis of this issue begins with an understanding of the Gains Tax itself. The Gains Tax was enacted during the

---

pending, before the date of the filing of the petition; or

 (iii) other than a tax of a kind specified in Section 523(a)(1)(B) or 523(a)(1)(C) of this ti-

tle, not assessed before, but assessable, under applicable law or by agreement, after the commencement of the case.

462

1983 legislative session as "part of a comprehensive package of tax measures designed to provide necessary revenues for the 1983–84 State budget." *Trump v. Chu*, 65 N.Y.2d 20, 23, 489 N.Y.S.2d 455, 478 N.E.2d 971 (1985), *app. dism'd*, 474 U.S. 915, 106 S.Ct. 285, 88 L.Ed.2d 250 (1985). This tax is known in New York State colloquially as the "Cuomo Tax." It was recommended by Governor Cuomo and passed by the Legislature for the purposes of providing New York State with additional revenues. The Gains Tax applies only to the transfer of real property where the consideration is greater than $1,000,000 and applies a tax on such transfers at a rate of ten percent of the entire gain. (Article 31–B, Tax Law § 1440 *et seq.*). The gain is measured by the difference between the actual selling price and the original purchase price, with certain limited adjustments. *Id.*

When discussing whether the Gains Tax is an "income tax", most courts have concluded that the nature of the Gains Tax is sufficiently different from an income tax as we know it when filing Federal or State income tax returns to preclude such comparison. As the Bankruptcy Court in *In re 995 Fifth Ave. Associates*, 116 B.R. at 388 noted:

> The word "income" when used in relation to statutory provisions regarding income taxes must be given its plain and ordinary meaning. 71 Am.Jur.2d, *State and Local Taxation* § 483 at 784 (2d ed. 1973). (In its ordinary and popular meaning, 'income' is the amount of actual wealth which comes to a person *during a given period of time.... The word in most if not all connections involves time as an essential element in its measurement or definition.* It thus is differentiated from capital or investment, which commonly means the amount of wealth which a person has on a fixed date.) *Id.* at 784, n. 75 (emphasis added) (citation omitted). Indeed, New York's personal income tax provisions are based on a period of time designated as each taxpayer's 'taxable year.' *See* N.Y. Tax Law § 601 et seq. (McKinney 1987).

However, what needs to be determined pursuant to Section 507(a)(7) is not whether the tax is an income tax as we know that phrase to mean, but whether it is a tax measured by income or gross receipts.

■ "Income" is commonly understood to mean "the return in money from one's business, labor, or capital invested; gain, profits, salary, wages, etc." *Black's Law Dictionary* 687 (5th ed. 1979). The definition of "gain" in *Black's Law Dictionary* is "profits; winnings; increment of value; the difference between receipts and expenditures; pecuniary gain; difference between cost and sale price. Appreciation in value or worth of securities or property." A tax on income is, by definition, one that is imposed on an economic benefit. Admittedly, the Gains Tax is imposed without taking into consideration all of the costs incurred in connection with the property, and as a result there is a risk that the Gains Tax may be assessed on a taxpayer who has suffered an economic loss. This result is unavoidable for two primary reasons. First, the Gains Tax is transactional in nature and does not allow for offsetting profitable transactions with non-profitable transactions. Second, the tax is based on a gain calculation which fails to account for certain discrete expenses which are directly attributable to the production of that gain. Unfortunately, whether the payment of this Gains Tax results in financial loss to the taxpayer, the Gains Tax is a tax measured by the "gain" of a specific transaction, as recognized by the Second Circuit in *In re 995 5th Avenue Associates, L.P.*, 963 F.2d 503, 513 (2nd Cir.1992):

> First ... New York gains tax liability is always contingent on the profitability of the underlying transaction. If the transaction yields no gain, there is no tax due. The fact that "gain", as calculated under the gains tax, does not take into account certain development costs in no way alters this core attribute of the gains tax ...

> Second, under the gains tax, the consideration for the sale ... is not determinative of the amount due under the gains tax. Instead, the consideration is used only as a means to measure the gain accruing to the transferor as a result of the transfer. It is the gain, albeit as defined by the provisions of the gains tax, that provides the

key figure for determination of the amount owed under the tax.

 This analysis is bolstered by a plain reading of Section 507(a)(7)(A) of the Code, which covers *all taxes on or measured by income,* not just "income taxes" which would encompass a more narrow group. The question of whether the Gains Tax is an income tax is not before the Court, although this is the most common interpretation of the Code section. Based on the measurement of the Gains Tax, the conclusion becomes inescapable that this is a tax measured by income or gain from a sales transaction, taking into consideration certain adjustments.

To be consistent with the characteristics of the New York State Gains Tax, the language of the Code, legislative history and the judicial interpretation afforded priorities under Section 507, this Court holds that the Gains Tax is a tax "on or measured by income or gross receipts", pursuant to Section 507(a)(7)(A) of the Code.

### *CONCLUSION*

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. Sections 1334 and 157(a). This is a core matter pursuant to 11 U.S.C. Section 157(b)(2)(B).

This Court finds that the Gains Tax is "a tax on or measured by income or gross receipts" for purposes of granting priority status to a claim based solely on Section 507(a)(7)(A) of the Code.

A continued hearing on the remaining portion of the Debtor's motion, including whether the Gains Tax was assessed within the time frame imposed pursuant to subsection (i), (ii), or (iii) of this section, will be placed on this Court's calendar for December 20, 1994 at 10:00 a.m. All briefs thereon are to be filed by December 12, 1994.

Settle an order in accordance with this decision.